Glynn H. GOODMAN, Appellant,

v.

UNITED STATES of America et al.
No. 22521.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 28, 1969.

Decided Jan. 30, 1970.

Rehearing Denied April 3, 1970.

Mr. Donald H. Dalton, Washington, D. C., for appellant.

Mr. Stephen R. Felson, Atty., Department of Justice, with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Morton Hollander, Atty., Department of Justice, were on the brief, for appellees. Mr. Robert V. Zener, Atty., Department of Justice, also entered an appearance for appellees.

Before WRIGHT, McGOWAN and LEVENTHAL, Circuit Judges.

McGOWAN, Circuit Judge:

Appellant brought suit in the District Court to compel the Department of Commerce to restore him to his position as an electrician at the National Bureau of

Standards. On cross-motions for summary judgment, that of the Government was granted. Upon appeal of that judgment, this court directed a remand to the Civil Service Commission for an evidentiary inquiry into the voluntariness of appellant's resignation. *Goodman v. United States*, 123 U.S.App.D.C. 165, 358 F.2d 532 (1966). *See also* Dabney v. Freeman, 123 U.S.App.D.C. 166, 358 F.2d 533 (1966). The Commission determined after hearing that appellant's resignation was voluntary, and the case is before us again on an appeal from the District Court's renewed grant of the Government's motion for summary judgment. For the reasons appearing hereinafter, we reverse, and direct that appellant be afforded an opportunity to appeal to the Civil Service Commission on the merits of his separation for cause.

### I

Appellant, an honorably discharged, partially disabled veteran, entered Government service in 1957 and moved to the National Bureau of Standards in 1958.[1] In May of 1961, he had advanced to the rank of Electrician WB–9, and was asked to undergo security clearance procedures so that he might work unescorted in restricted areas. On October 3, 1961, appellant was shown a letter of proposed charges against him developed from information collected during the security check.[2] Present at that meeting with appellant were Mr. Coiner, a Bureau personnel specialist, Mr. Quinn, appellant's supervisor, and two other supervisory officials. At that meeting, which lasted for approximately one hour, appellant was informed of the charges against him, given an opportunity to read the then undated and unsigned letter of charges, and told that, were he to resign before accepting the letter of charges, the charges would not appear on his separation papers.[3]

Appellant professed to be in some uncertainty as to what to do. He asked

---

1. The facts as herein related reflect the findings of the Commission. Appellant's version of what happened was contradictory in many respects, but we think the record adequately supports the Commission in its resolution of the conflicts.

2. The formal charges against appellant are stated in the letter in these terms:
   (1) unsuitability for employment in the National Bureau of Standards as evidenced by repeated use of intoxicating beverages to excess;
   (2) intentional deception in obtaining your appointment;
   (3) conduct unbecoming a Government employee; and
   (4) intentional false and misleading statements on an official document.

   The supporting reasons given are based primarily on a number of arrests involving excessive consumption of alcohol. Several of these occurred while appellant was in military service or shortly thereafter (1947–1950). A 1959 arrest was for carrying a concealed weapon, drunkenness, and contributing to the delinquency of a minor. This, and a 1960 arrest for being drunk and disorderly (for which appellant was fined $50), were cited under the charge of unbecoming conduct. In local court, appellant was convicted of the first two charges in the 1959 arrest, and

fined $100.00 (suspended) and $25.00, respectively. The delinquency matter was *nolle prossed* after (1) the youth involved denied that appellant had done the things claimed, and (2) the youth's father, appellant's former employer, told the judge that appellant had been a trustworthy and good employee, and requested that the charge be dropped. The charges involving deception and misrepresentation involve appellant's alleged lack of candor and completeness in the information volunteered by him as to his brushes with the law.

3. There is a suggestion in the record that at the October 3 meeting appellant mentioned getting a lawyer. There is, however, no definitive indication that he consulted a lawyer at any time prior to his resignation. Mr. Coiner testified that, at this October 3 meeting, he explained to appellant the rights available to him if he should elect to fight the charges rather than to resign.

   Under Section 14 of the Veterans Preference Act (now, in relevant parts, 5 U.S.C. §§ 7511, 7512, 7701) appellant was entitled to 30 days notice of proposed adverse action, the right to answer and to oppose the charges on the merits within the agency, and, should the agency decide to terminate his employment, a right of appeal to the Civil Service Commission.

for an opportunity to see Mr. Porter, the Bureau's Chief Personnel Officer, and was told to appear at Porter's office at 8:30 A.M. the following day (October 4). Porter was not present at the appointed time, but Coiner was. Appellant made small talk with Coiner for awhile and was told to return at 1 P.M. Appellant did so, and found Coiner and Porter waiting for him.[4] Porter informed appellant, as had Coiner the day before, that the record would be clear if appellant resigned before accepting the charges. He further explained that, if appellant did accept and receive the letter of charges, any resignation thereafter would indicate that specified charges had existed at the time of resignation. The alternative course of action open to appellant, namely, of refusing to resign and resisting the charges, was also again brought to appellant's attention. Saying words to the effect that "I've been fighting all my life," appellant accepted the charges, signed a receipt, and left the office with his letter of charges.

The next morning, appellant returned to Porter's office. He stated that he had shown the charges to "someone" and had been advised to resign. He again inquired as to whether the charges would be placed in his record and was told that they would.[5] Coiner then presented appellant with a Standard Form ("Request for Personnel Action"). Appellant inquired about the required employee statement of reasons for resignation and entered the statement: "To go outside and advance myself for a better position." He then asked about a resignation date

and Porter suggested October 27, that being the end of a pay period. On October 16, 1961, appellant attempted, by a telegram to Porter stating that he had retained counsel to defend himself against the charges, to withdraw his resignation. His request to withdraw the resignation was denied by return mail in a letter of October 17 from Porter stating that a resignation could be withdrawn only with consent, and the Bureau of Standards "declines to grant" such consent.

Approximately two and one-half years later—a delay sought to be explained by the death of the lawyer first retained by appellant—an appeal was filed with the Civil Service Commission. The Commission, however, refused to entertain it on the ground that there was no involuntary discharge to be appealed from, appellant having resigned. Appellant thereafter initiated the litigation in the District Court referred to at the outset of this opinion.

## II

In his telegram withdrawing his resignation, appellant characterized that resignation as the product of coercion, and this has continuously been a principal theme of his challenge to its effectiveness. The claim is that appellant was the uncounseled victim of duress and deception in his confrontations with the agency representatives culminating in the resignation. Appellant testified at length to this effect in the hearing following upon our remand, and this point was almost exclusively the focus of the

---

A voluntary resignation waives these rights. See Paroczay v. Hodges, 219 F. Supp. 89, 90 (D.D.C.1963).

4. It might be wondered whether appellant's request for a chance to get advice and counsel from Mr. Porter contemplated the presence at that interview of Mr. Coiner, who appears to have taken a leading role for the agency in this matter, or whether that presence obscured the benefits which appellant had thought to derive from it.

5. Appellant's testimony disputes this characterization of the colloquy, and appellant

argues that he was tricked in that the reference to the pending charges was put into the personnel form after he had signed it, contrary to his understanding that it would not be. We are, however, satisfied with the findings of the Commission on this score, although, as mentioned hereinafter (pp. 7–8), effective personnel counselling on this occasion would arguably have included reminding appellant that, with his separation now required to be under a cloud, there was less to be said for his foregoing the opportunity to contest it under the Veterans Preference Act.

argument on his behalf to the District Court.

▮▮▮ The weakness of this approach resides, among other things, in the circumstance that there are many direct conflicts in the testimony by appellant, on the one hand, and the agency representatives, on the other, as to what was said and done in their meetings. These conflicts have largely been resolved by the trier of fact against appellant, and we cannot say that these credibility resolutions are erroneous. Neither can we say, any more than could the District Court, that the record of the voluntariness hearings was lacking in substantial support for the Commission's ultimate conclusion that appellant's resignation was not involuntary in the sense of being the product of improper compulsion or trickery.

Our difficulty derives from another issue raised by appellant both at the Commission level and in the District Court, namely, the propriety of the refusal to countenance appellant's withdrawal of his resignation prior to its taking effect, for the express purpose of defending himself against the charges made against him. Our point of departure in this regard is the obvious concern of Congress that veterans of military service on their country's behalf, like appellant, should, as civilian employees of the Government, be assured the fullest opportunity to resist efforts to expel them from their jobs on allegations of misconduct. The Veterans Preference Act, with its impressive panoply of procedural rights, eloquently embodies that concern.

Against this background, we cannot be oblivious of these circumstances:

1. Nowhere in the record does it appear that, prior to signing the resignation, appellant ever conceded the validity of the charges against him or their adequacy to support his separation.

2. No agency representative directed appellant's attention to the fact that, since the pendency of the charges was going to be noted on the face of the resignation form, he had very little, if anything, to lose by declining to resign and fighting the charges if he felt, as he purported to do, that they were unjustified. We think it not insignificant in this regard that Porter testified to the "surprise" of both Coiner and himself when appellant came back on October 5 for the purpose of resigning.

3. With appellant's resignation safely in hand on October 5, Porter did not apparently feel that the public interest required that appellant terminate his work and depart the premises promptly. Instead, Porter himself suggested that the effective date be three weeks later, namely, October 27.

4. While appellant was still on the job, and with 11 days remaining before he was due to leave it under a cloud, he sent the telegram advising Porter that he had consulted and retained a lawyer for the purpose of exercising his rights under the Veterans Preference Act, and that, accordingly, he wished to withdraw the resignation.

5. Porter's reply of the very next day stated only that agency consent was necessary to withdrawal, and that the agency refused such consent. There is no reference whatsoever to any reasons why the agency had acted instantaneously to refuse such consent, nor to any intra-agency consultations or discussions leading to a considered judgment to that effect. The implication is inescapable that Porter, having once eliminated the inconvenience of proving the charges against appellant by getting his resignation in hand, was not disposed to abandon that advantage. When appellant's attorney vigorously expressed to higher authority his views of Mr. Porter's response, he received a letter dated October 26 from the Assistant Director of the Bureau. This letter addresses itself only to the question of whether appellant's resignation was improperly coerced. It concludes by saying that, because the Bureau believes it

was not, "we see no basis for rescinding this action." The regulation in question, however, is not reasonably subject to the construction that consent is always to be refused when voluntariness is found.

In its decision following the remand hearing, the Commission's Board of Appeals and Review dealt with the withdrawal issue in this wise:

\* \* \* Concerning [appellant's] attempted withdrawal of his resignation on October 16 by telegram, the agency correctly states requirements pertaining to resignations, currently set forth in Section 2–3, Sub-chapter 2 of Chapter 715 of the Commission's Federal Personnel Manual, which reads as follows:

> "A resignation is binding on the employee once he has submitted it. However, the agency may, in its discretion, permit an employee to withdraw his resignation at any time until it has become effective."

Agency officials elected not to agree to the withdrawal of Mr. Goodman's resignation. It was their right not to do so and in the Board's judgment they had a right to rely on Mr. Goodman's decision to resign, in any event, and certainly when it followed a letter of proposed removal for cause. The Board cannot help but observe what chaos would result, if every time an employee against whom adverse action was proposed could defeat the agency's decision to do so simply by filing a resignation to be effective in the future and then, after inducing the agency to drop its proceedings on the basis of the submission of the resignation, go ahead and withdraw the resignation. It would be an impossible situation with which to contend. The Board finds that Mr. Goodman's resignation was valid and the agency was under no obligation to honor a request for withdrawal of that resignation prior to its effective date.

Words like "chaos" and "impossible situation" fall readily from bureaucratic lips when confronted with the prospect of doing something not absolutely required by the book. To us, as to Judge Weinfeld in Haine v. Googe, 248 F.Supp. 349, 352 (S.D.N.Y.1965),[6] the alternative of consenting to withdrawal might perhaps be thought to fall somewhat short of "chaos," at least as that term is normally understood, and to involve only the inconvenience of proving the charges made against appellant in the manner provided by the Veterans Preference Act. It may seem inconceivable, if indeed not intolerable, to one who made the charges in the first place that he should voluntarily relinquish the advantage of not having to prove them, but we doubt that it would invariably appear so to the enactors of that statutory charter of protections for military veterans now in federal civilian service.

The *Haine* case is closest to the one before us in that Judge Weinfeld was there dealing with a veteran in federal employment who voluntarily submitted a resignation effective two weeks later, and who sought to withdraw it before that latter date.[7] The only official re-

---

6. Speaking to the allegedly dire consequences of a consent, as distinct from the denial which was forthcoming, by the employing agency there involved to a request for withdrawal of a resignation, the court said:
   " \* \* \* If plaintiff's services were unsatisfactory, there were available to the agency statutory procedures for her separation from service consistent with such rights to which she was entitled as a veteran. [footnote omitted] On the other hand, if her services were satisfactory, the public interest is not advanced nor efficiency of service necessarily achieved by requiring the consent of the agency in order to permit her to withdraw her unacted-upon resignation."

7. Two of our earlier cases involved unsuccessful efforts to withdraw resignations. *See* Rich v. Mitchell, 106 U.S.App.D.C. 343, 273 F.2d 78 (1959), cert. denied, 368 U.S. 854, 82 S.Ct. 91, 7 L.Ed.2d 52 (1961), and Competello v. Jones, 105 U.S. App.D.C. 412, 267 F.2d 689 (1959).

sponse to the attempted withdrawal there was a telegram a day before the effective date saying that the employment would be terminated "notwithstanding [the] withdrawal request." Referring to common law cases involving public officers, and taking into account the Congressional solicitude for this class of employees plain upon the face of the Veterans Preference Act, Judge Weinfeld concluded that, "as a matter of law," the veteran employee in that case "had the right to withdraw her resignation before it was accepted, and that her request for its destruction rendered it ineffective; that the refusal to give effect to her right to withdraw the resignation constituted agency action which separated her from the Service contrary to her rights under the Veterans' Preference Act."

The Government decries the relevance of *Haine* because the resignation was described there as not having been "accepted," and also because the Commission regulation relied upon by the agency in the case before us was not then in effect. We do not, in any event, find the factor of "acceptance" to be visibly relevant either to the facts or to the rationale of the holding in *Haine;* the significant factor was that the resignation was sought to be withdrawn well in advance of its effective date, and no reason was given as to why its with-

drawal would affect adversely the agency's administration of its personnel requirements. Neither do we believe it necessary to explore on this record the content of either "acceptance" or "submission" since, under the regulation, authority is expressly vested in the agency to permit withdrawal until the resignation has become effective.[8]

That authority is, of course, characterized as reposing in the agency's discretion, and it is asserted to us that, there being no challenge to the validity of the regulation generally, we must leave undisturbed the particular exercise of discretion under it represented by the agency's declination of consent in this instance. That does not follow at all. Insofar as we can tell from this record, there was not even any meaningful effort to exercise discretion, except as discretion may have been equated with an automatic purpose to frustrate any invocation of the rights conferred upon appellant by the Veterans Preference Act.[9]

■ The agency, of course, did not disclose this as the basis of its negative answer to appellant, but neither did it identify any other reason, such as administrative disruption, the hiring of a replacement, or any other circumstance unrelated to a simply desire not to go through a contested hearing. The ef-

Neither appears to have involved a veteran, and both preceded by many years the issuance by the Commission of the regulation relied upon here. Our treatment in each instance is cursory, and neither governing nor enlightening insofar as the issue of withdrawal takes shape in the record before us.

8. It is, of course, possible that "acceptance" might, under the personnel practices of an employing agency, set in train consequences of a concrete character justifying the exercise of discretion in favor of withholding consent. For example, "acceptance" might be the occasion for abolishing the position entirely or making a commitment for a replacement. It does not appear on this record that, assuming appellant's resignation to have been accepted, anything of this nature occurred.

9. When it is remembered that the long shadow of the Veterans Preference Act falls across the discretion envisaged by the Commission in its regulation, the situation is not unlike that obtaining under Rule 15(a), Fed.R.Civ.P., with respect to the amendment of pleadings. The Supreme Court has said in that context, Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), that:

"* * * Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

fort by the Commission's Board of Appeals and Review to provide an *ex post facto* rationale for the agency's action can not serve as a substitute for articulated agency discretion; and its apocalyptic forebodings, at least as applied to the facts of this case, perilously verge upon the nonsensical.

We decide only that, on this record, we can discern no exercise of discretion in denying the resignation withdrawal which we can take to be an effective withholding of consent. In these circumstances, we think that fidelity to the purposes of the Veterans Preference Act dictates that the resignation be deemed to have been withdrawn, and that appellant is entitled to have the appeal he filed with the Civil Service Commission determined on the merits of the charges made against him, and not dismissed, as it was, for lack of jurisdiction because of the resignation. We view the status of this matter after remand to be as it was when appellant's initial effort to appeal to the Commission was turned down for want of jurisdiction.[10] All issues relating to the merits of the charges remain open.

The judgment of the District Court is reversed, and the case is remanded to it for remission to the Commission for further proceedings consistent herewith.

It is so ordered.

Before: Wright, McGowan and Leventhal, Circuit Judges, in Chambers.

PER CURIAM.

ORDER

This cause came on for consideration of appellee's petition for rehearing. The petition for rehearing is in actuality a request by the Government for an interpretation of this Court's opinion. It professes to be concerned that that opinion may contemplate the immediate reinstatement of appellant and a related award of back pay. That is not, however, what the opinion says. It did not turn upon any technical deficiencies in the discharge proceedings within the employing agency, but rather upon a finding that, under the circumstances, the Civil Service Commission improperly applied its own regulation in refusing to entertain appellant's appeal to it. The Court has directed that that appeal, as distinct from appellant himself, be reinstated, and the merits of appellant's discharge be heard and determined. Rights of reinstatement and back pay are to abide that event. We expressly said that "all issues relating to the merits of the charges remain open." That includes any defense founded upon laches which may be tendered and litigated in proceedings following upon our remand. In view of the foregoing, it is

Ordered by the Court that the petition for rehearing is denied.

---

10. Appellant's originally retained counsel asked the Commission, in his letter to it of November 16, 1961, that that letter be taken as his "official notice of appeal" from the Bureau's action in separating appellant from his employment. It was rejected for lack of jurisdiction in the reply letter of November 29, 1961, from the Commission's Appeals Examining Office. Appellant's second retained counsel, by his letter of April 19, 1964, unsuccessfully asked the Commission's Board of Appeals and Review to nullify the earlier rejection.