Katherine **CUNNINGHAM**

v.

The **UNITED STATES.**

**No. 433–60.**

United States Court of Claims.

April 17, 1970.

Katherine Cunningham, pro se.

Katherine H. Johnson, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DURFEE, Judge.

This is a civil pay case in which both sides are moving for summary judgment.

In this *pro se* case, plaintiff seeks to recover salary and accumulated annual leave from the date of her resignation. She was employed as a mathematician at the Wright Air Development Center, Wright-Patterson Air Force Base, Ohio, from July 1956 until June 12, 1959, the effective date of her resignation. Plaintiff had submitted her written resignation to the Air Force on May 23, 1959, specifying on the standard form provided that "The effective date of my resignation will be 12 June 1959," and with this notation: "To be explained in letter to follow asking for permission to petition headquarters ARDC."

Plaintiff alleges in paragraph 1 of her petition that she "has been deprived of her employment * * * in the Air Research and Development Command, United States Department of the Air Force, for reasons other than for the good of the service, by arbitrary and capricious acts committed in bad faith by the defendant * * * and by defendant's violation of the Veterans' Preference Act of June 27, 1944, as amended (5 U.S.C. Sec. 863); The Air Force Civilian Personnel Manual, AFM 40-1, Section E2.2; applicable Civil Service rules and regulations; and the due process clause of the Fifth Amendment to the Constitution of the United States."

The petition further alleges that about eight hours after signing the resignation, she first became aware of facts which would have in her mind "negated the weight of said immediate duress" which had prompted her resignation. She sought orally to withdraw the resignation. Air Force regulations provided that a resignation could be withdrawn only by the mutual consent of the employee and the Air Force, unless it was due to coercion or undue influence. AF Manual 40-1, Section E2.2. Plaintiff's request was orally denied. She then wrote to the Commanding General, and asked for permission to withdraw her resignation. In this letter of May 25, 1959, she stated that her Branch Chief, Mr. Milton Warshawsky, told her that he

was disappointed in her job progress; that she "then did experience great fear" about her job and "because of Mr. Warshawsky's disappointment in me I signed a resignation statement." She stated that later, she realized that she had misunderstood Mr. Warshawsky, and that to resign had not been the proper thing to do, and therefore she withdrew her resignation.

On May 28, 1959, Colonel Theo. V. Prochaska, DCS Personnel Center, wrote to plaintiff, acknowledging her request to withdraw her resignation, and stated as follows:

Chapter AF S1, Air Force Manual 40-1, states that a resignation "may be withdrawn *only by mutual agreemen between the Air Force officials concerned and the employee.*" After due consideration of all factors, it is not considered to the mutual advantage of yourself and the Air Force to withdraw this resignation. You will therefore be separated by voluntary resignation effective 12 June 1959. [Emphasis supplied]

This denial was dated 14 days before June 12, 1959, the effective date of resignation specified by plaintiff.

At this point, we emphasize that plaintiff was a "preference eligible employee" entitled, to all of the procedural protection afforded by the Veterans' Preference Act, 5 U.S.C. § 7511 (Supp. IV, 1965–68).

On June 6, 1959, plaintiff sent a second letter to the Commanding General, asking for a grievance hearing before a grievance committee, and asserting a number of instances as to conditions of her employment constituting "insuperable duress which could only be reasonably expected to terminate by an act of resignation." She also requested that Wright Air Development Center "be required to present all reasons why [her] withdrawal of resignation [was] disallowed * * * and proof * * * for all such reasons," and that she be "reinstated, without prejudice and under more favorable conditions, * * *."

On the same date of June 6, she wrote to the Director of the Sixth U. S. Civil Service Region, asserting the same complaint of duress, and requesting permission to bring the same issues before a Civil Service Board of Appeals.

These two requests each stated in clear and unmistakable import that plaintiff wanted a hearing to show conditions of her employment that constituted "insuperable duress" as the cause of her resignation. The two letters were dated six days before the effective date of her resignation, June 12, 1959.

On June 15, 1959, the Wright Air Development Center wrote to plaintiff acknowledging her letter of June 6, 1959, requesting a grievance hearing before a grievance committee, and advising her that "[i]mmediate action will be taken to appoint an ad hoc grievance committee as prescribed in the Air Force Grievance procedure." This committee was appointed and rendered its decision, based upon a review of plaintiff's grievance letter, related correspondence and statements by two of plaintiff's supervisors. The committee concluded that plaintiff's resignation was voluntary and without coercion. In reaching this conclusion, the committee stated that its finding was confirmed by plaintiff's letters of May 25th and June 6th, and accordingly, *she had no rights to appeal under the grievance proceedings.*

The letter of May 25th may have been indicative of a voluntary resignation, but the letter of June 6th was a request for a hearing, based upon an alleged involuntary resignation obtained by alleged duress, and it was dated six days before the effective date of the resignation.

The Air Force Commander affirmed this decision on June 23rd, concluding "Air Force Manual 40–1, Chapter E–2, stipulates that voluntary resignation *terminates any rights to appeal under the*

*grievance procedure"* and "no further action will be taken." Noteworthy is the fact that the Air Force relied solely upon its own grievance procedures, and completely ignored the additional procedural protection required under the Veterans' Preference Act; in fact, the Act was not even mentioned by the Air Force.

In answering plaintiff's other appeal to the Civil Service Commission, its Regional Director replied on June 12 rejecting her appeal because the matters submitted for review *"are not adverse actions* within the meaning of Section 14 of the Veterans' Preference Act or Regulation 9 of the Federal Personnel Manual." [Emphasis supplied] This finding is based upon the conclusion by the Commission that because plaintiff stated that she had "signed a resignation statement in order to avert further irreparable degradation of * * * [her] professional standing," this indicated "that the decision to resign was made by you voluntarily." This conclusion, like that of the Air Force, ignored her clear assertion of duress in her request for a hearing on appeal, dated June 6th.

■ Section 3(a) of the Air Force Regulation (AFM 40–1, Section E2.2 (dated March 1955)) providing for the grievance procedure declared in pertinent part:

(2) The committee is a fact-finding and advisory body. It has one primary purpose, which is to assist the commander in arriving at a prompt and fair decision by making a full and complete evaluation of the evidence in the case; by impartially appraising the evidence; and by reporting to the commander a record of the hearing proceedings, a statement of the committee's findings, and its recommendations.

(3) The chairman of the committee will (a) make certain that the hearing is scheduled promptly and conducted in an orderly and expeditious manner and that the regulations governing hearing procedure and order of business are observed; (b) be responsible for the maintenance of necessary records; and (c) assist the committee in making its recommendations to the commander.

We think it clear that this regulation required that the employee be granted a hearing before the grievance committee if he desired one, and that in such a case the committee could not proceed without the participation of the employee. In Miss Cunningham's case, she had clearly demanded a hearing and the right to appear, but the committee nevertheless proceeding in her absence and without her participation. This was a plain violation of the governing regulation which rendered void the findings of the committee and the subsequent determination of the Air Force that the resignation was voluntary. *See, e. g.,* Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Piccone v. United States, 407 F.2d 866, 186 Ct.Cl. 752 (1969).

■ It follows that there was no valid determination by the agency that the resignation was voluntary, and that plaintiff was separated without a procedurally valid determination by the Air Force that her resignation was voluntary.

Under the Veterans' Preference Act, 5 U.S.C. § 7511(2) (Supp. IV, 1965–68) (formerly § 863) the "adverse action" referred to by the Civil Service Commission "means a removal, suspension for more than 30 days, furlough without pay, or reduction in rank or pay." From the record before us, we find that the action of the Air Force in separating her without a proper finding that her resignation was voluntary, and also in refusing to grant her request to withdraw her resignation, *dated 18 days before the specified date of the resignation,* and her separation effective June 12, 1959, was an "adverse action" taken by the agency that resulted in her "removal" under the Act.

Accordingly, she was entitled, under § 7512 of the Act, to: (1) at least 30 days' advance written notice, * * * stating any and all reasons, specifically and in detail for the proposed action [by the grievance committee of the agency,] (2) a reasonable time for answering the notice personally and in writing and for furnishing affidavits in support of the answer, and (3) a notice of an adverse decision. Plaintiff was not accorded the rights accorded her under subsections (2) and (3) above under the purposes and provisions of the Veterans' Preference Act.

Upon her appeal of June 6, 1959 to the Civil Service Commission, she was entitled under the Veterans' Preference Act, 5 U.S.C. § 7701 (Supp. IV, 1965–68) (formerly § 863):

> * * * to appear personally or through a representative under regulations prescribed by the Commission. The Commission, after investigation and consideration of the evidence submitted, shall submit its findings and recommendations to the administrative authority and shall send copies of the findings and recommendations to the appellant or his representative. The administrative authority shall take the corrective action that the Commission finally recommends.

Defendant in its brief and argument, asserts that plaintiff waived her rights as an employee under the grievance procedure because her resignation was voluntary, that there is no evidence of "duress" or "coercion" in the legal sense, and that her resignation was voluntary.

However, plaintiff never waived her rights under the Air Force grievance regulations or the Veterans' Preference Act; on the contrary, she asserted them emphatically in her appeals, based upon duress, to the Air Force and to the Civil Service Commission. There is no such waiver provision in the Veterans' Preference Act, and there is no finding that the adverse action taken against plaintiff

would "promote the efficiency of the service" under § 7512 of the Act.

The first refusal of May 25, 1959, by the Air Force was because the regulations required "mutual agreement" to withdraw a resignation. From then on, however, the steady and persistent reply to plaintiff's request, and to both of her appeals was that the resignation was not involuntary because it was voluntary, and that was an end to the entire matter. To paraphrase Gertrude Stein's "a rose is a rose is a rose," a resignation that is voluntary is voluntary is voluntary.

■ Accordingly, we first conclude that the denial of plaintiff's procedural rights under §§ 7512 and 7701 of the Veterans' Preference Act and the Air Force regulations was arbitrary, unreasonable, contrary to law, and not supported by substantial evidence. Defendant relies upon the recent decision of this court in McGucken v. United States, 407 F.2d 1349, 187 Ct.Cl. 284, cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969), where we concluded that "the Civil Service Commission had substantial evidence upon which to conclude that plaintiff's resignation was voluntary." 407 F.2d at 1351, 187 Ct.Cl. at 288. McGucken resigned, effective February 7, 1966, because he was unwilling to accept a reassignment. He never asked to withdraw his resignation, and two days later, appealed to the Civil Service Commission. The Commission concluded that because the resignation was voluntary, the reassignment was not an "adverse action" under the Commission's regulations. In holding that this determination was based upon substantial evidence, the court pointed out that McGucken was unwilling to accept a reassignment, which indicated both freedom of choice and no coercion; and that despite the fact that he had three days before the effective date of the resignation to decide whether to re-accept the assignment or not it was *later* that he claimed mental illness and nervousness. Miss Cunningham asserted "insuperable duress" in her

two appeal six days before the effective date of her resignation. Indeed, the record in this case is replete with uncontroverted affidavits that plaintiff was seriously ill, and mentally disturbed because of her fear of coercion and duress in her employment, and that her supervisors must have known of this condition at the time she resigned. This was the same evidence that she vainly asked to present at hearings before the Air Force Grievance Committee and the Civil Service Commission.

Furthermore, we have considered a recent decision in Goodman v. United States, et al., 424 F.2d 914, decided January 30, 1970, by the U. S. Court of Appeals for the District of Columbia Circuit. In that case, the Civil Service Commission had refused to entertain Goodman's appeal because there was no involuntary discharge to be appealed from, because he had resigned voluntarily, and the District Court granted summary judgment for the Government. The Court of Appeals, on the second appeal, reversed with directions to afford plaintiff an opportunity to appeal to the Civil Service Commission "on the merits of his separation for cause." The Court of Appeals refused to say that the record of the voluntariness hearing "was lacking in substantial support for the Commission's ultimate conclusion that Goodman's resignation was not involuntary * * *." However, the court continued:

Our difficulty derives from another issue raised by appellant both at the Commission level and in the District Court, namely, *the propriety of the refusal to countenance appellant's withdrawal of his resignation prior to its taking effect,* for the express purpose of defending himself against the charges made against him. Our point of departure in this regard is the obvious concern of Congress that veterans of military service on their country's behalf, like appellant, should, as civilian employees of the Government, be assured the fullest opportunity to resist efforts to expel them from their jobs on allegations of misconduct. The Veterans Preference Act, with its impressive panoply of procedural rights, eloquently embodies that concern. [Emphasis supplied] at p. 917.

The court then cited Haine v. Googe, 248 F.Supp. 349 (S.D.N.Y.1965), and pointed out at p. 919, that the significant factor there was that "the resignation was sought to be withdrawn *well in advance of its effective date,* and no reason was given as to why its withdrawal would affect adversely the agency's administration of its personnel requirements." [Emphasis supplied] In speaking of the authority of the agency to permit withdrawal until the resignation has become effective, the Court of Appeals said in *Goodman, supra*:

That authority is, of course, characterized as reposing in the agency's discretion, and it is asserted to us that, there being no challenge to the validity of the regulation generally, we must leave undisturbed the particular exercise of discretion under it represented by the agency's declination of consent in this instance. That does not follow at all. Insofar as we can tell from this record, *there was not even any meaningful effort to exercise discretion,* except as discretion may have been equated with an automatic purpose to frustrate any invocation of the rights conferred upon appellant by the Veterans Preference Act. [Emphasis supplied] p. 919.

Miss Cunningham's request to withdraw her resignation was denied over two weeks before its effective date because it could be withdrawn "only by mutual agreement" under the regulation, and it was not considered "to the mutual advantage of yourself and the Air Force to withdraw this resignation." Like the Court of Appeals in *Goodman, supra,* " * * * we can discern no exercise of discretion in denying the resignation withdrawal which we can take to be an effective withholding of

consent. In these circumstances, we think that fidelity to the purposes of the Veterans' Preference Act dictates that the resignation be deemed to have been withdrawn, * * *." *Id.* at p. 920.

Defendant attempts to distinguish *Goodman, supra,* because there, the resignation sought to be withdrawn frustrated the appeal of formal charges of misconduct which would remain in the record. We agree that this is not the situation in the present case. However, because there were no charges of misconduct against Miss Cunningham when she resigned, there is no basis for remand to the Commission or to the trial commissioner. Having already determined that both the agency and the Civil Service Commission erred in denying plaintiff's procedural rights under the Veterans' Preference Act, and in refusing to permit her to withdraw her resignation over two weeks before its effective date, without any demonstrable exercise of discretion, plaintiff must be regarded as not lawfully separated or removed, and thus is entitled to back pay from the date of her separation to date of judgment. Hanifan v. United States, 354 F.2d 358, 173 Ct.Cl. 1053 (1965); Garrott v. United States, 340 F.2d 615, 622, 169 Ct.Cl. 186, 198 (1965).

Defendant advances a further reason why *Goodman, supra,* should not be followed, *i. e.,* that it can reasonably be anticipated to create substantially adverse effects upon personnel administration and work to the detriment of employees. Apparently, a similar argument by the Government was made in *Goodman, supra,* to which the court responded that, "[w]ords like 'chaos' and 'impossible situation' fall readily from bureaucratic lips when confronted with the prospect of doing something not absolutely required by the book. * * *" p. 918.

In Haine v. Googe, *supra,* the court, in speaking of these alleged adverse effects upon personnel administration and employees, said:

* * * If plaintiff's services were unsatisfactory, there were available to the agency statutory procedures for her separation from service consistent with such rights to which she was entitled as a veteran. On the other hand, if her services were satisfactory, the public interest is not advanced nor efficiency of service necessarily achieved by requiring the consent of the agency in order to permit her to withdraw her unacted-upon resignation. *Id.* 248 F.Supp. at 352.

It is therefore concluded that plaintiff is entitled to recover, that defendant's motion for summary judgment is denied, and plaintiff's cross-motion is granted, with the amount of recovery to be determined by Rule 131(c).

NICHOLS, Judge (concurring):

I concur in the opinion and judgment of the court. As I said, concurring, in Cosby v. United States, 417 F.2d 1345, 1346, 189 Ct.Cl. 528, 530 (1969):

* * * * * *

If an employee's continued presence in an agency is regarded as undesirable, and if he tenders any piece of paper purporting to be a resignation, the temptation is to snatch at it, thus avoiding the complex ritual and uncertain outcome of an adverse action. It is, I believe, the duty of the personnel officer nevertheless to scrutinize the paper with care, and to reject it as a resignation if it states, clearly or ambiguously, that the resignation is coerced. * * *

The same is true if the statement is made in a separate communication submitted by the employee simultaneously or at any time before the purported resignation takes effect.