**Fred E. WILSON, Appellant,**

v.

**George R. SHULTZ, Secretary of the Treasury, et al.**

**No. 23898.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 1, 1972.

Decided March 15, 1973.

---

John P. Witsil, Washington, D. C., submitted on the brief for appellant.

Kenneth Michael Robinson, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and Nathan Dodell, Asst. U. S. Attys., submitted on the brief for appellees. Harold H. Titus, Jr., U. S. Atty., also entered an appearance for appellees.

Before FAHY, Senior Circuit Judge, and WRIGHT and WILKEY, Circuit Judges.

FAHY, Senior Circuit Judge:

In the District Court appellant, Wilson, sued the Secretary of the Treasury and the Commissioner of the Bureau of Narcotics in the Treasury [1] to have declared involuntary a resignation he had signed as an employee of the Bureau, and for related relief. On the basis of the pleadings, memoranda of the parties and the administrative record compiled in the Civil Service Commission, the District Court granted the motion of the officials, appellees, for summary judgment.[2] The Commission's Board of Appeals and Review had sustained a decision of its Appeals Examining Office that the resignation was voluntary. The court held this decision to be supported by evidence of substance in the record.

Appellant, an American citizen, was employed in the Bureau of Narcotics at Beirut, Lebanon, where he resided with his wife and children. In March, 1963, two Inspectors of the Bureau, conducting an audit, attributed to appellant what they advised him were certain financial irregularities in the Beirut office. There ensued for the next few days considerable discussion between the Inspectors and appellant and between appellant and others as to the course he should adopt, revolving principally around whether he should or would resign. On March 6, 1963, he submitted a resignation to the Inspectors, to be effective March 16, 1963. Before that date arrived he returned to the United States with his family and promptly advised the Commissioner of Narcotics, by letter of his attorney under date of March 11, 1963, that his "tendered resignation is now withdrawn and we intend to take all steps necessary to see that his good name is protected and his status remains unimpaired." [3] Appellant maintained that the resignation was not voluntary. No response was made to the

---

1. The Bureau of Narcotics was formerly part of the Treasury Department. In 1966, it was renamed the Bureau of Narcotics and Dangerous Drugs and made part of the Department of Justice.

2. At the same time appellant's motion for summary judgment was denied.

3. Appellant then, and thenceforth, maintained he had done no wrong.

withdrawal letter, although under date of March 12, 1963, the Commissioner acknowledged receipt of appellant's resignation, "accepted effective March 16, 1963." [4]

Appellant on May 23, 1963, appealed to the Appeals Examining Office of the Civil Service Commission, stating that the resignation had been obtained through "force and coercion." Upon request he submitted by affidavit of June 6, 1963, a detailed statement of his position. The Appeals Examining Office on July 18, 1963, decided that the resignation had been voluntary. Appellant then appealed to the Board of Appeals and Review, which, deeming the record inadequate, required further proceedings at the level of the Appeals Examining Office. These followed, including a hearing, but resulted on April 3, 1964, in the same conclusion. The decision states:

> The jurisdiction of the Commission to review the appellant's case depends upon whether his separation from the Treasury Department was a discharge within the meaning of the Veterans' Preference Act of 1944.

> Since we have found it was not, the appeal is rejected for want of jurisdiction.[5]

On appeal to it again the Board of Appeals and Review, on September 16, 1964, affirmed the decision of the Appeals Examining Office. On September 30, 1964, appellant filed suit in the District Court. For two basic reasons now to be explained we reverse and remand.

**I**

We conclude that summary judgment for appellees was unwarranted. The administrative record[6] leaves unresolved the factual issue as to the voluntariness of the resignation. The decision of the Appeals Examining Office, affirmed by the Board of Appeals and Review, sets forth at some length the conflicting evidence upon the issue and then disposes of it in the following manner upon the basis solely of appellant's "own representation":

> Turning back to his original statement submitted to us over Mr. Wilson's signature under oath, Mr. Wilson says, (1) that he was advised a resignation would stop an investigation of his claims regarding expenditures at Beirut, (2) that he was faced with the fear that if he was discharged in Beirut he would have to pay his own passage home, (3) that he sought advice and was told to go ahead and sign the resignation; get transportation home; he could get the whole thing set aside in the United States.

> Thus, on the face of the appellant's own representation, it does not appear he acted in fear of economic loss—hardship to his family, but acted out a plan with forethought to stop an investigation in Beirut, get himself and his family home and arrive in the United States in status quo Criminal Investigator, GS–12.

This contraction of appellant's affidavit of June 6, 1963, is incomplete in nu-

4. The letter directed appellant upon arrival in Washington and until the close of business March 15, 1963, to report to the Bureau's headquarters office, and authorized the expenses of his return, and that of his immediate family, household goods and personal effects, to be charged to a stated appropriation.

5. Under the case law as it has developed, and been followed by the Commission, a voluntary resignation is not adverse personnel action of the agency subject to Civil Service Commission review as to its validity. If, however, the resignation is involuntary the separation of the employee by reason of such a resignation is simulated as a discharge. Dabney v. Freeman, 123 U.S.App.D.C. 166, 358 F.2d 533 (1965), citing Paroczay v. Hodges, 219 F. Supp. 89 (D.D.C.1963); Goodman v. United States, 138 U.S.App.D.C. 1, 424 F. 2d 914 (1970); Cunningham v. United States, 191 Ct.Cl. 471, 423 F.2d 1379 (1970).

6. In its decision the District Court adverted to the pleadings and memoranda. Nothing in them detracts from our position based upon the administrative record.

merous respects. The affidavit stated that he was told that if he did not resign forthwith he would not be given transportation to the United States for his wife, children or household effects, that "It's a long swim," that the Inspectors would make a report which would make it virtually impossible for him again to obtain government employment, that being unable to obtain proper counsel he consulted an official connected with the Embassy and was advised by Embassy personnel that in view of the undue influence exercised upon him "he should submit the resignation which would be without validity since it was done under duress and the situation could be rectified upon his return to the United States."

Even as condensed by the Appeals Examining Office his representations do not support the Office's conclusion that "it does not appear he acted in fear of economic loss—hardship to his family . . . .," for the decision itself demonstrates [7] that he did in part act out of fear that if he did not resign he would be stranded in Beirut, and if he did resign then he, his family, and his household goods would be returned at Government expense—"that he was faced with the fear that if he was discharged in Beirut he would have to pay his own passage home."

We accordingly cannot agree that in light of appellant's representations there was no genuine or material issue of fact as to the voluntariness of the resignation. The administrative record did not authorize the summary judgment for appellees. It did not support the basis upon which the decision was made.

Moreover, the administrative record was incomplete in an important respect. It has been noted that a substantial factor bearing upon the resignation was the representation by the Inspectors, and consequent belief on the part of the appellant, that it was necessary for him to resign to obtain transportation home for himself and family at government expense. As the Chairman of the Board of Appeals and Review advised appellant's counsel:

The Board finds that Mr. Wilson had reason to be apprehensive . . . . It would have been quite natural for this apprehension or anxiety to encompass not only the question of his own future Government career but also the question of his entitlement to Government-paid transportation back to the United States for himself, his family and his household goods in the event that he did not resign but was removed from service while overseas. The Board finds that

7. The decision of the Appeals Examining Office contains the following presentation of appellant's representations:

[Appellant], in his affidavit of June 6, 1963, . . . says they [the Inspectors] told him if he did not resign forthwith, that he would not be given transportation back to the United States for his wife and children nor would his household effects be transported. He says the inspectors remarked "it's a long swim," threatened to tie up "his Civil Service Retirement" and make reports which would make it "virtually impossible for the affiant to again obtain employment in the service of the United States."

He says he consulted with an official of the U. S. Embassy in Beirut and was unable to obtain proper counsel but however was advised by certain of the personnel in the Embassy that in view of

the circumstances he should submit the resignation which would be without validity since it was done under duress and the situation could be rectified upon his return to the United States.

\* \* \* \* \*

The appellant stated he expressed his belief that the Bureau would not abandon him and his family in a foreign country. He said the Inspector replied he didn't know anything about an abandonment but if the appellant wished to become an expert on the subject he could by refusing to sign the resignation.

He said the Inspecor remarked he could sign the resignation or swim back; threatened to tie up salary due and retirement benefits and said the appellant would never be able to get another job with the government if he did not sign the resignation.

faced with these questions, Mr. Wilson finally decided freely and voluntarily to submit his resignation when he was told that he could do so for personal reasons and that the Government would pay for the cost of transportation of himself, his family and his household goods.

Letter of September 16, 1964, from the Chairman to appellant's counsel at that time.

The situation thus disclosed gave rise to a question in our minds whether a government employee faced with the threat of discharge in a foreign land could be left stranded there with wife and children unless he resigned. After submittal of the case we inquired of the parties as to the legal requirements and government practice in this regard. In response the Government has submitted to the court "Field Information Circular No. 26" of the Bureau of Narcotics,[8] and explained the purport of Rule 6 of this Circular [9] as follows:

if a person completed two years at a foreign duty assignment post, or if he fails to complete two years at such post but such failure is due to circumstances beyond his control (such as being discharged for cause), then such person is entitled to one-way transportation expenses for returning his immediate family, household goods and

personal effects from the post of duty to his place of actual residence.
  .  .  .

We are also advised by the Government that appellant had been transferred to Beirut on February 27, 1961, where he served until he submitted his resignation on March 6, 1963, more than two years thereafter.[10] No reference was made to this Circular in connection with any of the circumstances of the resignation or proceedings with respect thereto. Whether the resignation is considered in terms of coercion alone, deception or an otherwise unacceptable withholding of essential information, the importance of this Circular is obvious.

The judgment for appellees not being supported for the reasons we have given, the District Court now has the responsibility of deciding independently whether or not the resignation was involuntary or otherwise ineffective. If so found, appellant's separation from the service must be held to have been a discharge, note 5, *supra*. In that event appellant, under the Veterans' Preference Act, 5 U.S.C. § 7512 (1970), would be entitled, so far as now appears, to procedural rights which have not been accorded, including formal notice of charges and a hearing with respect to them.[11] The District Court may in its sound discretion permit the record before the court,

---

8. The circular was issued on April 1, 1958, pursuant to the Act of August 31, 1954, ch. 1155, 68 Stat. 1008.

9. Rule 6 of Circular No. 26 provides as follows:
   *Allowable expenses prior to employee's return.* (a) An employee shall be allowed one-way transportation expenses for returning his immediate family and his household goods and personal effects from his post of duty to his place of actual residence in the continental United States, one of its territories or possessions, not to exceed those allowed over a usually traveled route between the post of duty and place of actual residence at time of assignment to such post, and will be paid not in excess of one time during such agreed upon period of service, when:

(1) The employee has acquired eligibility for return transportation by satisfactorily completing the agreed upon two-year period of service.
   *   *   *   *   *

10. He was transferred to Beirut from Rome, Italy, where he had been assigned since October 5, 1959.

11. Dabney v. Freeman, 123 U.S.App.D.C. 166, 358 F.2d 533 (1965) does not chart the course to be adopted in this case. Aside from differences there exposed with respect to questioned resignations, in terms of the standards for judicial review, reflected in the dissenting opinion, the course followed in that case does not control this case because we are convinced that the basis for the finding of voluntariness is not supported by the administrative record.

largely the administrative record, to be supplemented by the parties with additional evidence if so advised.

## II

A separate basis for our reversal and remand is now considered. In Goodman v. United States, 138 U.S.App.D.C. 1, 424 F.2d 914 (1970), a government employee submitted a resignation after formal charges which might have eventuated in separation from the service for cause. The employee underwent a change of mind prior to the effective date of the resignation and withdrew it, as the court construed his action. He claimed the resignation had been due to coercion and deception by the agency's representatives. In proceedings before the Civil Service Commission it was there determined that the resignation was voluntary. The Commission rejected the employee's position and held that the resignation had not been effectively withdrawn, relying upon section 2–3, subchapter 2 of chapter 715 of its Federal Personnel Manual, which reads:

> A resignation is binding on the employee once he has submitted it. However, the agency may, in its discretion, permit an employee to withdraw his resignation at any time until it has become effective.

The District Court in upholding the Commission granted summary judgment for the Government. This court reversed. We pointed out that it was unnecessary to explore the content of "acceptance" or "submission" of a resignation, since in any event authority was expressly vested in the agency by the above regulation to permit withdrawal until the resignation had become effective. We said:

> That authority is, of course, characterized as reposing in the agency's discretion, and it is asserted to us

that, there being no challenge to the validity of the regulation generally, we must leave undisturbed the particular exercise of discretion under it represented by the agency's declination of consent in this instance. That does not follow at all. Insofar as we can tell from this record, there was not even any meaningful effort to exercise discretion, except as discretion may have been equated with an automatic purpose to frustrate any invocation of the rights conferred upon appellant by the Veterans Preference Act. (Footnote omitted.)

\*    \*    \*    \*    \*    \*

> We decide only that, on this record, we can discern no exercise of discretion in denying the resignation withdrawal which we can take to be an effective withholding of consent. In these circumstances, we think that fidelity to the purposes of the Veterans Preference Act dictates that the resignation be deemed to have been withdrawn, and that appellant is entitled to have the appeal he filed with the Civil Service Commission determined on the merits of the charges made against him, and not dismissed, as it was, for lack of jurisdiction because of the resignation. We view the status of this matter after remand to be as it was when appellant's initial effort to appeal to the Commission was turned down for want of jurisdiction. All issues relating to the merits of the charges remain open. (Footnote omitted.)

Goodman v. United States, *supra*, 138 U.S.App.D.C. at 6–7, 424 F.2d at 919–920. And see Cunningham v. United States, 191 Ct.Cl. 471, 423 F.2d 1379, at 1384–1385 (1970). There is also not the slightest indication of the exercise of discretion by the agency in appellant's case with respect to honoring the withdrawal of his resignation.[12]    On the

---

12. The letter withdrawing the resignation as we have seen was submitted to the Bureau on March 11, 1963. The Commissioner's letter of March 12, 1963, acknowledging receipt of the resignation made no mention of its withdrawal. Of-

ficial Form 50, entitled, Notification of Personnel Action, dated March 27, 1963, and signed by the Commissioner of the Bureau of Narcotics also failed to indicate that appellant had submitted a withdrawal.

record before us we find no meaningful distinction between *Goodman* and Wilson's case on the issue of withdrawal.

■ The legal developments disclosed by *Goodman* and *Cunningham* occurred subsequently to the decisions by the Commission and the District Court in our case.[13] The withdrawal, however, had not been abandoned.[14] If under the principles of *Goodman* and *Cunningham* it should have been considered as honored, the court should honor it now, though the particular legal principles enunciated the *Goodman* and *Cunningham* were not relied upon until the case reached this court. Since, however, there may be reasons why those principles do not control, which the Government should have an opportunity to advance if so advised, the impact of *Goodman* and *Cunningham* upon appellant's case is left initially to the District Court on the remand.

Reversed and remanded for further proceedings consistent with this opinion.

13. The District Court's decision issued on December 5, 1969, whereas the *Goodman* and *Cunningham* decisions occurred in 1970.

14. The District Court considered the withdrawal, stating in its order as follows:
Plaintiff's contention that his resignation was not accepted before he sought to withdraw it is barred by the doctrine of exhaustion of administrative remedies, and in any event is not sustained by the record . . . .

The question under *Goodman* is not whether the resignation had been accepted but whether its withdrawal had been submitted before the effective date of the resignation. If so, the agency was required to consider it; and the *Goodman* case to that effect having been decided subsequently to the pendency of appellant's case before the agency and the Commission, the exhaustion doctrine we think does not preclude the courts from applying the principles of *Goodman* in now deciding Wilson's case.