Harvey M. SCHARF, Petitioner,

v.

DEPARTMENT OF THE AIR FORCE, Respondent.

Appeal No. 59–82.

United States Court of Appeals, Federal Circuit.

June 30, 1983.

Timothy J. Lowenberg, Tacoma, Wash., argued for petitioner.

Randall B. Weill, of Washington, D.C., argued for respondent. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Donnie Hoover. David P. Buck, Lieutenant Colonel

USAF, Washington, D.C., Office of the Judge Advocate General, of counsel.

Before BENNETT, MILLER and SMITH, Circuit Judges.

BENNETT, Circuit Judge.

This is an appeal from a final decision of the Merit Systems Protection Board (MSPB). *See* MSPB No. SFO752B8110009 (July 14, 1982). The issue below was whether petitioner's optional retirement from the federal service was a voluntary or involuntary retirement. The MSPB, in reversing the decision of its Seattle Field Office, held petitioner's retirement to be voluntary because he was neither forced to retire nor intentionally deceived about his retirement options. Thus, the MSPB dismissed petitioner's appeal for lack of appellate jurisdiction. *See* 5 U.S.C. §§ 7511(b), 7512, 7513(d) (Supp. V 1981); 5 C.F.R. § 752.401(c)(3) (1982). For the reasons that follow, we *reverse* the decision of the MSPB.

I. *Background.*

The petitioner, Harvey M. Scharf, retired from federal military service on July 31, 1960, after completing 5 years of National Guard Service and 20 years and 8 days of active duty in the United States Army and Air Force. The following day, August 1, 1960, he began his federal civil service career with the Air Force Commissary Service.

In November 1967, while employed as a Commissary Officer at McChord Air Force Base near Tacoma, Washington, petitioner underwent radical surgery for removal of approximately half of his stomach. As a result of this surgery, petitioner suffers from a condition known as "stomach dumping," i.e., he experiences abrupt bowel voiding after consuming food or drink. Petitioner was able to accommodate his medical condition as long as his travel was limited.

In October 1979, the petitioner was made the Director of the Northwest Complex for the Air Force Commissary Service. In this new position, petitioner was responsible for the management and operational control of five commissary complexes in four states: Washington, Montana, Idaho, and Utah. This increased responsibility and greatly increased travel caused petitioner's health to deteriorate.

Therefore, in March 1980, petitioner sought retirement advice from the agency counselor, Mr. Don Tanner. Mr. Tanner was one of two part-time counselors employed by the agency. Neither counselor had ever received any formal training concerning retirement benefits.[1] At this meeting, petitioner and Mr. Tanner discussed ways to maximize petitioner's optional retirement benefits; they did not discuss disability retirement. Mr. Tanner correctly advised petitioner that he should retire based on his 20 years of civil service alone rather than on his more than 40 years of civil and military service combined. Thus, on May 6, 1980, petitioner submitted an application for optional retirement based on his 20 years of civil service, setting August 8, 1980, as the effective date.

Three weeks later, on May 27, 1980, petitioner visited his physician, who advised him to stop working and to stop traveling. Petitioner followed this advice and went on extended sick leave. Because he was unable to work, petitioner promptly went to see Mr. Tanner about submitting an application for disability retirement. Mr. Tanner told the petitioner that a decision on a disability retirement application was unlikely before August 8, 1980, the effective date of petitioner's optional retirement. Petitioner then asked Mr. Tanner about the effect of his optional retirement preceding his disability retirement. Although there was conflicting testimony on this point, the presiding official at the MSPB's Seattle Field Office found that Mr. Tanner told

---

1. After Mr. Scharf filed his MSPB appeal in this case, the agency relieved both part-time counselors of their duties and, for the first time, hired a full-time counselor.

petitioner that "if he retired optionally and that if later his disability retirement were approved and he had already retired that the optional retirement would be set aside and he would go on disability retirement." From Mr. Tanner's statement, one would think that there would be no adverse effects if an optional retirement preceded a disability retirement. But this is not so. Under an optional retirement, accumulated sick leave is added to the length of the retiree's civil service in order to calculate his annuity. Under disability retirement, however, a retiree is allowed to "stay on the rolls" (i.e., stay on the payroll) to exhaust his sick leave at full pay before receiving retirement benefits. But this advantage to disability retirees is not available if an optional retirement precedes a disability retirement.

Despite this adverse consequence, the presiding official found that Mr. Tanner never advised petitioner to withdraw his optional retirement, or informed him that he could not "return to the rolls" if his optional retirement preceded his disability retirement. Thus, when petitioner's disability retirement application, filed June 6, 1980, was approved on August 29, 1980, he was, to say the least, surprised to learn that he could not return to the rolls to exhaust his accumulated sick leave.[2]

Naturally, petitioner was upset by this fact. After the Air Force refused to allow him to return to the rolls, petitioner filed this action with the MSPB, contending that his August 8 optional retirement was involuntary and should be cancelled. The MSPB's presiding official at the Seattle Field Office carefully weighed all the evidence and found: (1) petitioner could have reasonably concluded from Mr. Tanner's statements that he would be returned to the rolls to use his accumulated sick leave if his disability retirement was approved after the effective date of his optional retirement; and (2) petitioner, in good faith, had

in fact believed that he could return to the rolls. Because petitioner had not understood the situation, the presiding official held that his retirement was involuntary. Thus, the agency was ordered to cancel the petitioner's optional retirement and to reinstate him to his former position on sick leave status, effective August 8, 1980.

On appeal, the MSPB reversed the presiding official's initial decision. Although it did not question the factual findings of the presiding official, the MSPB held that petitioner's optional retirement was voluntary because he was neither forced to retire nor *intentionally* deceived about his retirement options. Petitioner has timely appealed from the MSPB's decision.

II. *Discussion.*

■ To determine whether a resignation or retirement is voluntary, a court must examine "the surrounding circumstances to test the ability of the employee to exercise free choice." *Perlman v. United States,* 490 F.2d 928, 933, 203 Ct.Cl. 397 (Ct.Cl.1974).

With freedom of choice as the guiding principle, it has been held that the element of voluntariness is vitiated when (1) an employee resigns under duress brought on by government action, *see, e.g., McGucken v. United States,* 407 F.2d 1349, 1351, 187 Ct.Cl. 284 (Ct.Cl.), *cert. denied,* 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); (2) an employee unsuccessfully tries to withdraw his resignation before its effective date, *see Cunningham v. United States,* 423 F.2d 1379, 1384–85, 191 Ct.Cl. 471 (Ct.Cl.1970); (3) an employee submits a resignation under time pressure, *see Perlman,* 490 F.2d at 932–33; or (4) an employee fails to understand the situation due to mental incompetence, *see Manzi v. United States,* 198 Ct.Cl. 489, 492 (1972). Several other cases have also indicated that a resignation will be held involuntary if obtained by agency misrepresentation or deception. *See Taylor v. Unit-*

---

**2.** It is undisputed that when petitioner went to see Mr. Tanner about disability retirement in late May 1980, he had approximately 2,000 hours of accumulated sick leave. The record, however, does not indicate how many hours of this sick leave remained on August 8, 1980. The petitioner was apparently on extended sick leave from late May 1980 to August 8, 1980, the effective date of his optional retirement.

*ed States,* 591 F.2d 688, 692, 219 Ct.Cl. 86 (Ct.Cl.1979); *Christie v. United States,* 518 F.2d 584, 588, 207 Ct.Cl. 333 (Ct.Cl.1975).

In this case, the petitioner contends that his optional retirement was involuntary because he was misled and failed to understand that he could not return to the rolls to exhaust his accumulated sick leave if his optional retirement preceded his disability retirement.[3] The record clearly indicates that petitioner's failure to understand was due to the fact that he was misled as to the consequences of his optional retirement by the agency counselor, Mr. Tanner. As stated earlier, when petitioner inquired as to the effect of his optional retirement preceding his disability retirement, Mr. Tanner told petitioner that his "optional retirement would be set aside and he would go on disability retirement." The presiding official found that the petitioner could have reasonably concluded from this statement that he would be put back on the rolls and allowed to use his accumulated sick leave once his disability retirement was approved. We agree. We believe that this statement was highly misleading and materially affected the petitioner's decision regarding retirement. A reasonable person would certainly have concluded from the advice received that there would be no adverse consequences if an optional retirement preceded a disability retirement. Furthermore, it was reasonable for petitioner to rely on the advice of his retirement counselor, and he did in fact rely on this advice in good faith.

■ The MSPB, however, reversed the presiding official's initial decision because there was no evidence that petitioner was forced to retire[4] or was *intentionally* deceived about his retirement options. We agree with the MSPB that there is no evidence that Mr. Tanner intentionally deceived the petitioner. But this lack of evidence is not critical here, as the scienter requirement imposed by the MSPB is an unnecessary one. An employee is not required to show an intent to deceive on the part of the agency in order for his retirement to be held involuntary. Rather, it is sufficient if the employee shows that a reasonable person would have been misled by the agency's statements.[5] We have in the past applied an objective test in situations involving duress or coercion, *see Christie,* 518 F.2d at 587. We believe that an objective test is equally applicable to situations involving misrepresentations or deception. Applying this test, the court will neither inquire into the subjective perceptions of the employee, *see Taylor,* 591 F.2d at 692, nor the subjective intentions of the agency.

■ In this case, it is clear that the statement made by Mr. Tanner to petitioner was misleading under an objective test, and that petitioner, indisputably a reasonable man, in good faith, justifiably relied on this misleading advice to his detriment. *Cf. Ainsworth v. United States,* 180 Ct.Cl. 166, 172 (1967). Under these circumstances, we hold that the petitioner's optional retirement from the federal civil service was an involuntary retirement. Because involuntary retirements are adverse actions and the agency stipulated at the hearing that it did not use the procedures required by 5 C.F.R. §§ 752.301, 752.404 (1982), we order the agency to cancel the petitioner's optional retirement and to reinstate him to his former position, on sick leave status, effec-

---

**3.** The petitioner contends, and the presiding official found, that the agency had an affirmative duty to counsel petitioner fully about the advantages and disadvantages of optional versus disability retirement. *See* Federal Personnel Manual Supp. 831–1, § S10–5 (1978). We need not decide this issue here, however, as we have found that the agency's inadequate counseling in this case affirmatively misled the petitioner about his retirement rights. *See infra.*

**4.** Petitioner has never contended that he was forced to retire. Therefore, those cases dealing

with allegations of duress or coercion are distinguishable from the situation presented here. *See, e.g., Leone v. United States,* 204 Ct.Cl. 334, 338–40 (1974); *McGucken,* 407 F.2d at 1351.

**5.** Of course, if an employee is able to show an intent to deceive on the part of the agency, then an objective test may not apply. In that situation, it may be sufficient that the employee was actually misled, even though a reasonable person would not have been.

**1576**

tive August 8, 1980. Of course, petitioner's back pay will be reduced by the retirement benefits already received during the sick leave period. When petitioner's sick leave is exhausted it is further ordered that he then revert to disability retired status, the same already having been approved. Accordingly, after thorough consideration of the record and the parties' submissions, and after oral argument, we respectfully reverse the decision of the MSPB as the legal test it imposed is contrary to law. *See* 5 U.S.C. § 7703(c)(1) (Supp. V 1981), *amended by* the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 144, 96 Stat. 25, 45.

REVERSED.