Michael D. BERGMAN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–122C.

United States Court of Federal Claims.

July 2, 1993.

Robert T. Summa, St. Louis, MO, for plaintiff.

William C. Peachey, Washington, DC, with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant. Lt. Col. Conrad M. Von Wald, Dept. of Air Force, of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). The issue is whether the court has jurisdiction to entertain an Air Force officer's challenge to his single promotion passover in light of the officer's resignation pursuant to the Voluntary Separation Incentive program.

## FACTS

The following facts derive from the administrative record, unless otherwise indicated.[1] On May 15, 1980, Michael D. Bergman ("plaintiff") was appointed a second lieutenant in the United States Air Force Reserve. Two years later, on the anniversary of his appointment, plaintiff was promoted to the rank of first lieutenant. On January 12, 1984, plaintiff joined the Regular Air Force, and on May 15 was promoted to the rank of captain.

In anticipation of plaintiff's eligibility for promotion to the rank of major, plaintiff's superiors initiated the recommendation process in March 1991 in accordance with Air Force Regulation ("AFR") 36–10 (Aug. 1, 1988). AFR 36–10, entitled "Officer Evaluation System," requires the senior rater of the officer eligible for promotion to complete an Air Force Form 709 Promotion Recommendation Form ("PRF"). AFR 36–10 further requires that the senior rater's recommendation be based on both the senior rater's assessment of the officer's record of performance ("ROP") and any information received from the officer's superiors concerning recent performance. The senior rater's recommendation, however, is limited to one of three options: 1) "definitely promote"; 2) "promote"; or 3) "do not promote." The number of "definitely promote" recommendations is also limited based upon the number of promotion-eligible officers.

Plaintiff alleges that following the requirements of AFR 36–10, his immediate superior, Colonel ("Col.") Dale Yonker, gave plaintiff a "definitely promote" recommendation, which he forwarded in March 1991 to plaintiff's senior rater, Brigadier General ("Brig. Gen.") Lester Lyles. Brig. Gen. Lyles then changed the recommendation to "promote" before forwarding the PRF to the Central Selection Board ("CSB"). The latter action forms the basis of the complaint.

Plaintiff contends that on June 7, 1991, he learned from Brig. Gen. (then Col.) Raymond Shulstad, Brig. Gen. Lyles' assistant, that he had received only a "promote" recommendation on the PRF because he had failed to obtain a master's degree. Plaintiff also alleges that Brig. Gen. Shulstad informed him that his records had been submitted to the Air Force Systems Command (the "AFSC") carry-over board, the primary function of which is to designate additional "definitely promote" recommendations and to "specially designate" the top 20 percent of "promote" recommendations before the CSB assembles to make its decisions.

According to plaintiff's complaint, Brig. Gen. Shulstad's remarks regarding the significance of a master's degree for promotion directly contradicted previous statements made by plaintiff's superiors regarding the requirement for such a degree.

---

1. With its reply brief, defendant submitted the Declaration of CMSgt. Ronald W. Badour, June 9, 1993, and Lt. Col. Robert A. Magas, June 10, 1993. The court did not consider these materials in deciding this case.

Plaintiff alleges that in 1988 his superiors informed him that AFR 36–10 specifically prohibited a senior rater from considering an officer's enrollment in or completion of master's-level work in making a promotion recommendation. To verify this information, plaintiff represented to the Air Force Board for Correction of Military Records (the "AFBCMR") that in 1988 he scrutinized AFR 36–10 and Form 709 [2] and thereafter decided to complete his master's degree in July 1992, one year following the date on which he would be eligible for promotion to the rank of major. Plaintiff claims he remained confident with his degree decision because, in each of his six-month informal job performance evaluations since 1988, his superiors never mentioned that lack of an advanced degree would preclude him from future promotion opportunities. Accordingly, plaintiff takes the position that he reasonably relied on the foregoing in deciding not to complete his master's degree until the year after which he was eligible for promotion.

On July 8, 1991, plaintiff learned that the CSB had not designated him for promotion to the rank of major. The Board made its decision after reviewing and evaluating plaintiff's selection folder, which contained the PRF with Brig. Gen. Lyles' recommendation of "promote." On September 3, 1991, according to the complaint, Major Cynthia Gibbs, an employee in the personnel section of AFSC at Andrews Air Force Base, Washington, D.C., informed plaintiff that his materials were never sent to the carry-over board. This information contradicted previous statements allegedly made by Brig. Gen. Shulstad in June 1991. Major Gibbs further stated that in her opinion such records should have been forwarded.

Equipped with this newly acquired information, plaintiff confronted Brig. Gen. Lyles, his senior rater, on February 6, 1992, and requested a full explanation.

Brig. Gen. Lyles responded that the records were not submitted to the AFSC carry-over board because of plaintiff's failure to obtain a master's degree. Thus, plaintiff took the position before the AFBCMR that his lack of an advanced degree prevented him from both receiving the highest promotion recommendation from his senior rater, i.e., "definitely promote," and having his files sent to the AFSC carry-over board prior to review by the CSB.

Plaintiff met again with Brig. Gen. Lyles on March 4, 1992, to obtain the latter's signature on an updated memorandum documenting their February 6th meeting. Upon signing the typed memorandum, which stated that plaintiff's "lack of a Masters Degree was the only weakness in ... [his] records....", Brig. Gen. Lyles added to the memorandum, in writing, that, in his opinion, although plaintiff's job performance rated in the top 40 percent of captains, plaintiff's "records were not as strong as those of the individuals ... [who he had forwarded] to the AFSC carry-over board." Brig. Gen. Lyles also admitted that he was unaware of any requirement in AFR 36–10 prohibiting consideration of advanced degrees in promotion recommendations.

On February 21, 1992, plaintiff met with Chief Master Sergeant ("CMSgt") Ronald W. Badour of the Air Force Military Personnel Center ("AFMPC") to discuss the interrelationship between the Voluntary Separation Incentive ("VSI") program [3] and the appeals process before the AFBCMR. Plaintiff was interested in acquiring such information because he intended to appeal his single promotion passover to the rank of major. CMSgt Badour explained "that [the] AFMPC had recently established a policy ... [whereby] an officer with an appeal pending before the AFBCMR was eligible to apply for the VSI program and that if the officer prevailed ... the VSI

---

**2.** Form 709 contains specific instructions which prohibit the senior rater from "consider[ing] or comment[ing] on [the] enrollment in or completion of professional military education or advanced academic education."

**3.** Congress established the VSI program to assist with military downsizing. Under the terms of this program, participants receive annual payments for twice the number of years in which they served in active duty in exchange for early separation from the Air Force. 10 U.S.C.A. § 1175(e)(1) (West Supp.1993).

contract would be voided...." Plf's Br. filed May 19, 1993, at 4. CMSgt Badour further informed plaintiff that he could not appeal an AFBCMR decision and stated that he "would be 'stupid' ... not to apply for the VSI" program in light of the circumstances. Affidavit of Michael D. Bergman, May 18, 1993, at 2.

On February 27, 1992, plaintiff commenced the VSI application process by signing an application form. Plaintiff requested the latest possible separation date of December 31, 1992, to ensure that the AFBCMR had sufficient time to review and evaluate his impending appeal. In conjunction with his application, plaintiff signed a VSI/SSB application statement which read: "I understand my application to separate from the Air Force and receive VSI ... is an irrevocable action on my part...." Plaintiff, following VSI application procedures, then accepted counseling[4] from and obtained the signatures of his immediate superiors. According to plaintiff's affidavit, in both of the counseling sessions, which took place on February 27 and March 12, 1992, plaintiff's superiors advised him to apply for the VSI program. Having met the necessary requirements, plaintiff alleges he submitted his completed VSI application in early April 1992. The AFMPC approved plaintiff's resignation on April 10, 1992.

Plaintiff applied to the AFBCMR on May 14, 1992, "to be retroactively promoted to the rank of major with an original date of rank and to be awarded any military active duty back pay due as a result of the retroactive promotion...." Compl. filed Mar. 3, 1993, ¶ 17. Plaintiff later amended his application to request that his PRF be modified to reflect a recommendation of "definitely promote," as opposed to "promote," and to allow his records to be forwarded to a special selection board. Plaintiff did not request that the AFBCMR void his VSI contract.

The AFBCMR forwarded a copy of the advisory opinion to plaintiff in October 1992 for comment. Plaintiff then drafted comments of October 21, 1992, which included the following statements. First, plaintiff noted that his decision to leave the Air Force "was a purely financial decision based on the value of the VSI versus the value of the severance pay ... [he] would receive if passed over for a second time...." Second, plaintiff noted that he had graduated from Webster University on July 25, 1992, with a Master of Arts in Management, a 4.0 grade point average, and the designation of Distinguished Honors.

When delivering these comments, plaintiff verbally explained the urgency of his appeal to the Director of AFBCMR and requested confirmation that a favorable ruling on the appeal would result in termination of the VSI contract. Such a confirmation was obtained by the Director of AFBCMR from Major Magus, AFMPC/DPMAJA1.

On December 14, 1992, the AFBCMR denied plaintiff's application. The AFBCMR's decision explained that plaintiff had failed to provide sufficient relevant evidence to warrant reversing the discretionary judgments of the CSB. The AFBCMR noted that even if Brig. Gen. Lyles, plaintiff's senior rater, had inappropriately considered plaintiff's lack of a master's degree when making his promotion recommendation on the PRF, this factor alone would not authorize the AFBCMR to change the promotion recommendation to a "definitely promote." The AFBCMR further stated that consideration of a degree is but one of many factors weighed into the promotion recommendation process; it is not the dispositive factor. Other factors integral to the promotion recommendation process include an evaluation of the information in the applicant's ROP, as well as consideration of the number of "definitely promote" recommendations available.

---

**4.** According to the VSI application form, an officer applying for the VSI program must be counseled regarding "the timing of his or her separation, the reasons for separation, the bene-

fits of an Air Force career, and opportunities to participate with the Air National Guard or Air Force Reserve programs."

On December 31, 1992, plaintiff was separated from the Air Force pursuant to his VSI agreement. Plaintiff filed a complaint in the Court of Federal Claims on March 3, 1993, requesting active duty pay from January 1, 1993, to present, and any additional benefits of an officer in the rank of major, from May 1992, the date plaintiff would have been promoted, to present.

Plaintiff further requests an order directing the Secretary of the Air Force to correct plaintiff's military record, as follows: (a) declare plaintiff's discharge invalid; (b) reinstate plaintiff to active duty with the rank of captain; (c) void plaintiff's passover for the rank of major; (d) amend plaintiff's records so that no break in service exists; (e) insert a "definitely promote" on plaintiff's PRF; and (f) refer plaintiff's records to a special selection board for promotion reconsideration.

Defendant moves to dismiss for lack of subject matter jurisdiction. Defendant's motion is predicated on the characterization of plaintiff's resignation pursuant to the VSI program as a voluntary action, thereby precluding the court from considering the merits of the case.

## DISCUSSION

### 1. Motion to dismiss

When evaluating a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the allegations of the complaint should be construed favorably to the pleader, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), to the end that the court must accept as true the facts alleged in the complaint. *See also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988), *W.R. Cooper General Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988). The central issue in evaluating such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims...." *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686.

Plaintiff bears the burden of establishing jurisdiction. *Reynolds*, 846 F.2d at 748

(citing cases). Dismissal is appropriate only if "it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). For purposes of passing on a motion to dismiss pursuant to RCFC 12(b)(1), the court is not confined to an examination of the complaint. Instead, the court may consider "evidentiary matters outside the pleadings." *Indium Corp. of America v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986) (citations omitted).

### 2. Whether plaintiff's resignation was voluntary

The controlling law holds that the Claims Court—hence the Court of Federal Claims, its present designation—lacks jurisdiction when an officer voluntarily resigns from the military. *Sammt v. United States*, 780 F.2d 31, 33 (Fed.Cir.1985).

As an initial proposition, defendant argues that plaintiff has waived any right of appeal in a judicial forum because he failed in his appeal to the AFBCMR to "challenge[ ] the legality of his voluntary early separation...." Def's Br. filed Apr. 23, 1993, at 7. Defendant relies on *Maier v. Orr*, 754 F.2d 973, 984 (Fed.Cir.1985), which holds that a servicemember, by electing a voluntary discharge and failing to challenge the discharge, waives the right to contest such discharge in a judicial forum. Defendant's reliance on *Maier* is misplaced. In that case the AFBCMR ruled on the merits even though the plaintiff had voluntarily accepted an honorable discharge from the Air Force and filed the appeal three years after the discharge. Thus, *Maier* stands for the proposition that the issue of voluntariness poses no bar to the jurisdiction of the AFBCMR. Even assuming, arguendo, that the issue of voluntariness bears on the AFBCMR's jurisdiction, remanding the case for such a determination would be futile given that the AFBCMR already has spoken on the merits of plaintiff's case. This court, therefore,

need only determine for purposes of its jurisdiction whether plaintiff resigned voluntarily from the rank of captain in the United States Air Force.

▇ Determination of whether a specific resignation or retirement qualifies as voluntary requires an examination of all the facts and circumstances. *Covington v. Secretary of DHHS,* 750 F.2d 937, 941 (Fed.Cir.1984). The purpose of such a factual inquiry is to ascertain whether the employee exercised free choice in making the resignation or retirement decision. In general, resignations are presumed voluntary. *Christie v. United States,* 207 Ct.Cl. 333, 338, 518 F.2d 584, 587 (1975); *Heaphy v. United States,* 23 Cl.Ct. 697, 700 (1991), *aff'd mem.,* 972 F.2d 1355 (Fed.Cir.1992) (Table). This presumption endures even if the plaintiff is confronted with "a choice of unpleasant alternatives." *Sammt,* 780 F.2d at 33.

▇ The presumption of a voluntary resignation, however, is rebuttable in certain circumstances. *Scharf v. Department of the Air Force,* 710 F.2d 1572, 1574 (Fed. Cir.1983); *Christie,* 207 Ct.Cl. at 338, 518 F.2d at 587. These cases instruct, for example, that the presumption may be overcome if plaintiff can establish that the government agency wrongfully caused plaintiff duress or inappropriately coerced plaintiff into resigning. Moreover, the presumption may be defeated if plaintiff can establish that the government agency misrepresented information and that plaintiff detrimentally relied on such information. Finally, the presumption of voluntariness may be vitiated when an employee: 1) "unsuccessfully tries to withdraw his resignation before its effective date," *see Cunningham v. United States,* 191 Ct.Cl. 471, 481, 423 F.2d 1379, 1384–85 (1970) (holding plaintiff unlawfully separated because Air

Force failed to exercise discretion in denying plaintiff's request to withdraw her resignation two weeks before its effective date); 2) "submits a resignation under time pressure," *see Perlman v. United States,* 203 Ct.Cl. 397, 406, 490 F.2d 928, 932–33 (1974) (ruling plaintiff's retirement involuntary given the application deadline for annuity benefits and the fact that plaintiff had fewer than eight hours to verify information integral to his retirement decision); or 3) "fails to understand the situation due to mental incompetence," *see Manzi v. United States,* 198 Ct.Cl. 489, 492, 1972 WL 20799 (1972) (holding plaintiff's resignation involuntary because plaintiff was emotionally disturbed and incapable of understanding his act). *Scharf,* 710 F.2d at 1574.

In the case at bar, plaintiff first contends that his resignation was involuntary because it was submitted under duress in response to wrongful government conduct. Alternatively, plaintiff argues that the resignation was involuntary because he relied to his detriment upon government misinformation.[5]

### 3. *The duress/coercion exception to the presumption of voluntariness*

▇ To fall within the parameters of the duress exception, plaintiff must demonstrate "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Christie,* 207 Ct.Cl. at 338, 518 F.2d at 587 (citing *Fruhauf Southwest Garment Co. v. United States,* 126 Ct.Cl. 51, 62, 111 F.Supp. 945, 951 (1953)); *McGucken v. United States,* 187 Ct.Cl. 284, 289, 407 F.2d 1349, 1351, *cert. denied,* 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969). This is not a disjunctive test; as such,

---

5. Before evaluating these issues, it is important to note that Congress clearly delineated between a voluntary separation under the VSI program and an involuntary separation, by stating in 10 U.S.C.A. § 1175(j), a provision describing the Voluntary Separation Incentive program, that "[a] member of the armed forces who is provided a voluntary separation incentive under this section shall be eligible for the same benefits and services as are provided ... for members ... who are involuntarily separated within the meaning of section 1141...." 10 U.S.C.A. § 1175(j). The language of section 1175 further supports the presumption of voluntariness in this case. Absent a finding of duress or misrepresentation, such presumption will dictate the outcome of defendant's motion.

plaintiff must establish all three elements to prevail on a claim of duress and government coercion. *See Information Systems and Networks Corp. v. United States*, 994 F.2d 792 (Fed.Cir.1993) (all requirements of conjunctive must be established). The duress analysis requires the court to engage in an objective, as opposed to subjective, inquiry into the facts. *Christie*, 207 Ct.Cl. at 338, 518 F.2d at 587. Thus, an employee's subjective evaluation of the scenario is not the yardstick upon which the court will base its determination. *See Taylor v. United States*, 219 Ct.Cl. 86, 93, 591 F.2d 688, 692 (1979) (holding an employee's mistaken, subjective perception of a situation does not render a voluntary decision involuntary); *McGucken*, 187 Ct.Cl. at 289, 407 F.2d at 1351 (holding that "internal misconceptions" do not transform a voluntary decision into an involuntary one).

With regard to the first prong of the duress test, plaintiff fails to adduce sufficient evidence that he involuntarily accepted the terms of the VSI program. This program, which guarantees employees financial benefits in exchange for early separation, is optional for military staff. *See* 10 U.S.C.A. § 1175. The process for applying to the VSI program is left solely to the discretion of the individual employee. Hence, plaintiff was not forced to accept the terms of the program. It is also undeniable that plaintiff had the option to remain in the Air Force in the rank of captain because a single promotion passover, unlike a double passover, does not result in required termination. *See* 10 U.S.C. § 632 (1988).

Plaintiff contends that he satisfies both the first and second prongs of the duress inquiry "because he was faced with no other practicable alternative...." but to resign under the VSI program. Plf's Br. filed May 19, 1993, at 6. Plaintiff describes his position as one wherein he could "either accept[ ] an arbitrary and capricious action on the part of his command and separat[e][ ] under the VSI or face almost certain involuntary separation in the near future...." *Id.* Plaintiff admits that "he did not desire either option...." *Id.* To

support his argument that he had "no practicable alternative," plaintiff relies on *Roskos v. United States*, 213 Ct.Cl. 34, 549 F.2d 1386 (1977), wherein the plaintiff, a government employee, received a reassignment as punishment for an alleged disciplinary infraction. The reassignment required plaintiff to move immediately to a distant city. Plaintiff retired claiming the reassignment "was hazardous to his health and a hardship to his family." 213 Ct.Cl. at 36, 549 F.2d at 1387. The court agreed with plaintiff and found that "no ... good-of-the-service rationale" existed for the immediate reassignment, in light of the insignificant nature of the alleged offense. 213 Ct.Cl. at 39, 549 F.2d at 1388. Accordingly, the Court of Claims held the retirement to be involuntary, explaining that plaintiff's retirement was directly caused by the Government's unauthorized and unlawful reassignment. In *Roskos* the wrongful acts of the Government left plaintiff "with no practicable alternative" but to resign. 213 Ct.Cl. at 40, 549 F.2d at 1389. *But see Tannehill v. United States*, 18 Cl.Ct. 296, 301 (1989) (holding retirement voluntary because Air Force both adhered to regulations and possessed valid reason for reassigning plaintiff).

The administrative record reveals that plaintiff has presented this court not with a *Roskos* situation, but with a case that mimics *Sammt* and *Christie*, two cases establishing that the presumption of voluntariness cannot be overcome simply because plaintiff is confronted with "a choice of unpleasant alternatives." *Sammt*, 780 F.2d at 33. Plaintiff in *Sammt*, after a two-time passover, chose to "retire[ ] [on October 31, 1977] pursuant to 10 U.S.C. § 3911 (1976), relating to voluntary retirement, ... [as opposed to retiring on December 1, 1977 under the mandatory retirement provisions of] 10 U.S.C. §§ 3303(d), 3913 (1976) (repealed 1980)...." *Id.* The court held that the officer's retirement was voluntary because the officer, faced with a choice, selected voluntary retirement. Like the officer in *Sammt*, the servicemember in *Christie* had a choice: She could either resign or "stand pat and fight" the agency's decision to separate her for cause.

*Christie,* 207 Ct.Cl. at 338, 518 F.2d at 587. The court in *Christie,* emphasizing that the servicemember had a choice, also held that the resignation was voluntary. *See Heaphy,* 23 Cl.Ct. at 702 (holding plaintiff's resignation voluntary because he chose resignation over mandatory retirement).

In the case at bar, plaintiff did not face a situation wherein he had no practicable alternative. Specifically, he could either continue serving in the regular Air Force as a captain and await his second opportunity for promotion, or resign pursuant to the VSI program and capture the financial benefits associated with such program. *See* 10 U.S.C.A. § 1175(e). Plaintiff here, like plaintiffs in *Sammt* and *Christie,* had a choice to resign or to "stand pat and fight." No one forced or inappropriately coerced plaintiff to resign under the VSI program. Instead, plaintiff voluntarily chose the VSI option, thereby rejecting the status quo. The voluntariness of his choice is further evidenced by plaintiff's comments dated October 21, 1992, to the AFBCMR, in which he stated that his decision "was ... purely financial ... based on the value of the VSI versus the value of the severance pay ... [he] would receive if passed over for a second time...." Plaintiff emphasizes his "almost certain involuntary separation in the near future," due to his imminent second passover. Plf's Br. filed May 19, 1993, at 6. This alleged fact, however, does not enhance plaintiff's case because the probability of removal does not convert a voluntary resignation into an involuntary one. *Griessenauer v. Department of Energy,* 754 F.2d 361, 364 (Fed. Cir.1985). Moreover, the record is devoid of any evidence, other than plaintiff's conclusory assertions, that plaintiff would have been passed over for a second time.

Assuming, arguendo, that plaintiff had sufficiently established the first two prongs of the duress test, plaintiff's claim of duress still would fail because of insufficient evidence of government coercion. Plaintiff argues that his superiors advised him to apply for the program. Advice of a superior, however, does not render a VSI decision involuntary. The VSI program is specifically designed to ensure that candidates make their own decisions regarding program participation and that they make such decisions only after careful consideration of the ramifications of an early separation from military service. For example, every applicant to the program must participate in counseling sessions, wherein the applicant's superiors discuss "the timing of ... [the applicant's] separation, the reasons for separation, the benefits of an Air Force career, and opportunities to participate with the Air National Guard or Air Force Reserve programs." Each applicant also must obtain the signatures of his superiors and sign a VSI/SSB Application Statement acknowledging that the decision to separate "is an irrevocable action on ... [the applicant's] part...." Plaintiff in this case complied with all of these requirements. In addition to these base-line requirements, plaintiff met and discussed the VSI program with CMSgt Badour six days before applying for the program. *See McGucken,* 187 Ct.Cl. at 289, 407 F.2d at 1351 (three days to make a reassignment decision indicates freedom of choice, not coercion). Even crediting the averments of his affidavit, plaintiff was not coerced into making a quick decision. Instead, he made a personal choice to forego continued service in the military, a choice which he cannot now second-guess.

Finally, plaintiff contends that the extended length of time between his acceptance into the VSI program and his requested separation date, *i.e.,* eight months, indicates a desire to remain on active duty. This fact, however, provides no support for plaintiff's claim of duress and coercion. Again, no one in the Air Force forced plaintiff to resign; the option of remaining in the military always remained a viable option for plaintiff.

### 4. *The misrepresentation exception to presumption of voluntariness*

██ Misrepresentation and deception by a government agency also vitiate the presumption of voluntariness associated with employee resignations. *Scharf,* 710 F.2d at 1574; *see also Covington,* 750 F.2d at 942. Similar to duress and coercion cases,

application of an objective test is apposite for claims of government misrepresentation. Accordingly, "the court will neither inquire into the subjective perceptions of the employee nor the subjective intentions of the agency." *Scharf,* 710 F.2d at 1575 (citation omitted). To prevail on a claim of misrepresentation, therefore, an employee must establish both "that a reasonable person would have been misled by the agency's statements...." and that the employee did, in fact, rely on those statements. *Id.* (footnote omitted). Establishing that the agency intentionally deceived the employee, however, is not required for the court to declare a resignation involuntary.

■ Plaintiff alleges that he relied on misinformation provided by the AFMPC regarding the ramifications of a VSI contract. Specifically, plaintiff contends that CMSgt Badour informed plaintiff "that should plaintiff prevail on his ... appeal, the VSI contract would be terminated...." Moreover, plaintiff alleges that CMSgt Badour advised him "that ... [he] would have no right of appeal from a[n] AFBCMR decision and that ... [he] would be 'stupid' not to apply for the VSI under his present circumstances." Plf's Br. filed May 19, 1993, at 4 (quoting Bergman Aff. at 1–2).

Plaintiff argues that his reliance on this information is evidenced by the fact that he did not submit a VSI application until he received the assurance that a victory on the appeal would terminate his VSI contract. Plaintiff further states that "[i]n effect, ... [he] was told that there could be no adverse consequences from his decision to submit the VSI application." Plf's Br. filed May 19, 1993, at 9.

Plaintiff relies on both *Scharf,* 710 F.2d 1572, and *Covington,* 750 F.2d 937. Plaintiff in *Scharf* retired after receiving information from his retirement counselor that his voluntary retirement would be set aside and replaced by disability retirement if such retirement were approved. This information, however, was incorrect because a voluntary retirement which precedes a disability retirement precludes an employee from using accumulated sick pay. The court held the retirement involuntary, not-

ing that, contrary to the counselor's advice, adverse consequences, in fact, would result from a voluntary retirement. *Scharf* provides no support for plaintiff's claim of misrepresentation because the Air Force provided accurate information. The AFMPC correctly notified plaintiff that he could apply to the VSI program while maintaining an action before the AFBCMR and furthermore that a victory on his appeal would terminate his VSI contract. Nothing in the record vitiates the accuracy of these statements.

It is arguable, however, that plaintiff received misinformation from the AFMPC concerning his appeal rights, given the statement attributed to CMSgt Badour. Because the reasonable person standard governs cases of alleged misrepresentation, this court must examine all the facts and circumstances to ascertain whether a reasonable person would have construed the statement "no right of appeal from a[n] AFBCMR decision" to be a bar to all future appeals in any court or tribunal. Having reviewed the administrative record and plaintiff's submissions, this court holds that a reasonable person would have concluded that the statement applied only to the appeals process within the Air Force. The context of plaintiff and CMSgt Badour's conversation of February 21, 1992, supports this conclusion, given that the purpose of the conversation was solely to discuss the interrelationship between the VSI program and the AFBCMR appeals process, not the federal appeals process.

Furthermore, CMSgt Badour was a member of the AFMPC, *i.e.,* Air Force Military Personnel Center, and as such specialized in military personnel rights. This case, therefore, stands in marked contrast to *Scharf,* which involved a retirement counselor who gave incorrect retirement information. CMSgt Badour, a personnel specialist, gave plaintiff accurate advice regarding his lack of right to an appeal within the military infrastructure. The court has no reason to hold CMSgt Badour to a higher level of knowledge pertaining to the jurisdictional rights of the federal court system. Accordingly, the statement alleg-

edly made by CMSgt Badour regarding plaintiff's appeal rights fails to rise to the level of what courts consider misinformation, because the Air Force made neither inconsistent remarks to plaintiff, *Covington*, 750 F.2d 937, nor gave incorrect advice, *Scharf*, 710 F.2d 1572.

Given that plaintiff's misinformation claim fails, his only argument to support an involuntary resignation is that he received insufficient information regarding the VSI program prior to making his decision. In *Covington* the court, facing the same issue, held that "[a] decision made 'with blinders on,' based on ... a lack of information, cannot be binding as a matter of fundamental fairness and due process...." 750 F.2d at 943 (citation omitted). Moreover, the court noted that the agency's failure to properly notify plaintiff of his appeal rights caused him to make an important decision regarding retirement with incomplete information.

In this case it is arguable that the AFMPC failed to inform plaintiff as to the consequences of an adverse ruling from the AFBCMR. Although CMSgt Badour fully notified plaintiff that he "would have no right of appeal from a[n] AFBCMR decision," he did not comment on the possibility of filing a complaint in this court. Plf's Br. filed May 19, 1993, at 4. Reliance on *Covington* for the proposition that plaintiff lacked sufficient information to make a decision regarding the VSI program, however, is misplaced in light of *Gaudette v. Department of Transportation*, 832 F.2d 1256 (Fed.Cir.1987), wherein the Court substantially limited the holding of *Covington*. In *Gaudette*, the appeals court clarified the " 'lack of information' [language]" in *Covington*, as follows:

> That statement was made in connection with circumstances where the agency had given *misinformation* and had an affirmative obligation to correct the misinformation by supplying the correct information, i.e., the lacking information. It does not mean that an employee must be counseled with respect to appeal rights ... where the agency offers the employee the choice of a voluntary down-

grade which, if accepted, would avert a possible removal action.

832 F.2d at 1258. In *Gaudette*, two federal employees, who had failed to make satisfactory progress in their positions, faced the option of either a voluntary downgrade or the prospect of possible removal. The court held that failure of an agency to inform an employee of his appeal rights or to advise an employee on what constitutes a legally involuntary action does not transform the employee's voluntary action, i.e., accepting a voluntary downgrade, into an involuntary one. *Cf. Heaphy*, 23 Cl.Ct. at 703 (holding that a plaintiff who fails to become educated as to the law cannot be accorded relief simply because plaintiff elects to revisit his voluntary choice to resign).

Plaintiff in the instant case faced alternatives similar to those faced by petitioners in *Gaudette*. Specifically, plaintiff could either voluntarily retire pursuant to the VSI program or remain in the Air Force in the rank of captain and await his second opportunity for promotion. As such, the Air Force had no affirmative obligation to advise plaintiff of his appeal rights.

Based on the record before the court, plaintiff's resignation falls within the realm of a voluntary action.

## CONCLUSION

Based on the foregoing, plaintiff's decision to resign pursuant to the VSI program was voluntary and therefore this court is precluded from proceeding to the merits of the case. Accordingly, defendant's motion to dismiss is granted, and the Clerk of the Court shall enter judgment dismissing the complaint.

**IT IS SO ORDERED.**

No costs.