Donald R. SOEKEN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 00–02 C.

United States Court of Federal Claims.

Aug. 29, 2000.

Terrence J. Benshoof, Woodridge, Illinois, for plaintiff.

Domenique Kirchner, Washington, D.C., with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen and Assistant Director Deborah A. Bynum, for defendant.

## ORDER

MOODY R. TIDWELL, III, Senior Judge.

This case is before the court on defendant's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, or, in the alternative, failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and (4) of the Rules of the United States Court of Federal Claims. Plaintiff claims that his retirement from the United States Public Health Service (PHS) Commissioned Officer Corps was involuntary. In its motion to dismiss, defendant contends that this court lacks jurisdiction because plaintiff voluntarily retired in lieu of going before an involuntary retirement board. For the reasons set forth below, defendant's motion to dismiss is granted and oral argument is deemed unnecessary.

## BACKGROUND

This case concerns plaintiff's alleged involuntary retirement from the PHS Commissioned Officer Corps. Plaintiff, Donald R. Soeken, a licensed social worker, served in the regular Corps of Commissioned Officers of the PHS from July 6, 1967 until January 1, 1994. On January 1, 1994, plaintiff retired from the PHS Commissioned Officer Corps after submitting an apparent voluntary retirement application on August 2, 1993. The central issue is whether plaintiff's retirement from the PHS Commissioned Officer Corps was a voluntary or involuntary retirement.

The following facts are undisputed unless otherwise noted. At all relevant times, plaintiff was a clinical social worker for the Substance Abuse and Mental Health Services Administration (SAMSA) at Saint Elizabeths Hospital (SEH) in Washington, D.C. Since 1988, plaintiff served in the temporary grade O–6. In the spring of 1992, and again in the spring of 1993, plaintiff was considered by the promotion board for promotion to the permanent grade O–6, but each time the board decided against plaintiff's promotion. Because he had been twice passed over, the PHS advised plaintiff in a letter dated July 9, 1993, that in accordance with Commissioned Corps Personnel Manual (CCPM), Subchapter CC23.4, Instruction 5, (1) his temporary grade O–6 would be rescinded effective August 1, 1993; (2) he would serve in the permanent grade O–5 thereafter; (3) his record would be reviewed by an Involuntary Retirement Board (IRB); and, (4) if the IRB recommended that he be retired, he would be subject to involuntary retirement. In the same letter, plaintiff was informed that, in the alternative, he could submit an application for voluntary retirement.

On July 29, 1993, with his attorney present, plaintiff met with Suzanne Dahlman, Director, Division of Commissioned Personnel. At that meeting, the parties agreed that if plaintiff requested voluntary retirement, he could complete his service in the temporary

grade 0–6 rather than at the reduced pay grade O–5. On August 2, 1993, by facsimile, plaintiff submitted a voluntary retirement application to Ms. Dahlman requesting retirement effective January 3, 1994. In addition, plaintiff stated that his attorney would follow up with a letter of understanding and also requested that Ms. Dahlman reverse the reversion order rescinding the O–6 grade. That same day, Robert A. Whitney, Jr., Acting Surgeon General, approved plaintiff's request to retire without review by an IRB. Again, on August 27, 1993, plaintiff wrote to Ms. Dahlman confirming his intention to retire as a result of their July 29, 1993, meeting. Plaintiff continued to serve at the temporary O–6 grade until his retirement on January 1, 1994.

In 1996, plaintiff applied to the Board for Correction of PHS Commissioned Corps Records for correction of his records. The Board issued a decision on September 11, 1998, declining plaintiff's request. On January 3, 2000, plaintiff filed its initial complaint in this court, however, on April 26, 2000, plaintiff filed an amended complaint.

In the complaint, plaintiff alleges that he was constructively discharged after being coerced into submitting what purported to be a voluntary retirement application. Plaintiff maintains that there was a campaign within the PHS to force him to retire after (1) he complained in 1987 to his governing authority of an increase in patient caseload which allegedly violated regulations and (2) he gave deposition testimony in a medical malpractice suit which was unfavorable to the District of Columbia in 1989 and 1990. Plaintiff alleges that the government actively sought and planned his removal as illustrated by (1) a May 23, 1990, memorandum to SEH senior staff advocating that supervisors give lower ratings to O–6 officers to force retirements; (2) the return of his 1990 Commissioned Officer's Effectiveness Report (COER) to the rater for lower ratings; (3) a 1991 downgraded COER; (4) an unsigned memorandum recommending against promotion presented to the spring 1992 promotion board; (5) the adjustment of his 1992 COER from a "promote" to a "no promote"; (6) a December 31,

1992, letter written by Dr. Melvin Williams, Interim Commissioner of DCHS, recommending against promotion; (7) the suspension of plaintiff's outside activities and the creation of adverse performance memoranda in February 1993; (8) a January 1993 letter by Dr. Williams recommending against promotion; and (9) PHS' failure to give plaintiff prompt notice of the promotion board's 1992 decision or his right to counsel.[1]

In the complaint, plaintiff presents three causes of action to the court. First, plaintiff claims that PHS regulations were violated because (1) documents were placed in his file after the files were officially closed thereby precluding plaintiff's review prior to presentment of his official personnel file to the promotion boards; (2) he was not promptly and effectively notified of the first pass-over or notified of his right to counseling; and (3) a government attorney accessed plaintiff's file without proper notice to plaintiff. Second, plaintiff claims that PHS and the District of Columbia government violated the Military Whistleblowing Protection Act, 10 U.S.C. § 1034 (1994), because PHS and the government (1) effectively downgraded the ratings in his COERs in retaliation for his truthful testimony in litigation; (2) blocked his attempts to transfer to other positions; (3) permitted the submission of false and misleading information into plaintiff's records to prevent promotion and force retirement; and (4) coerced plaintiff to submit a voluntary retirement packet by withholding documents which prevented plaintiff from making an informed decision. Plaintiff's final claim is that he was denied a fair and impartial review by the Board of Corrections of Records because a member of his supervisory chain sat as the chairman of the board panel considering his case. Plaintiff requests compensation for 3 ½ years additional service in the grade O–6, correction of his records to reflect retirement after 30 years and the removal of all negative documents, including the 1991 and 1992 COERs, from his records.

In its motion to dismiss, defendant argues that the complaint should be dismissed because plaintiff's claims fall outside this court's jurisdiction. Defendant contends that

---

1. The Public Health Service vigorously disputes most of plaintiff's allegations contained herein.

the Court of Federal Claims lacks jurisdiction over plaintiff's (1) whistleblower claim because the Military Whistleblower Protection Act is not a money-mandating statute to support Tucker Act jurisdiction and (2) involuntary retirement claim because plaintiff voluntarily resigned from the PHS thereby depriving the court of jurisdiction to consider his claim.

## DISCUSSION

### I. Subject Matter Jurisdiction

■ The Court of Federal Claims is a court of limited jurisdiction. The Tucker Act grants this court jurisdiction to hear claims against the United States that are "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States...." 28 U.S.C. § 1491(a)(1) (1994). When a claim is not based upon breach of contract against the government, a plaintiff must assert a money-mandating provision of the Constitution, a statute, or regulation as a basis for jurisdiction in this court. *See* 28 U.S.C. § 1491(a)(1); *Tippett v. United States*, 185 F.3d 1250, 1255 (Fed.Cir.1999); *Moyer v. United States*, 190 F.3d 1314 (Fed.Cir.1999). The burden of establishing jurisdiction is on the plaintiff. *See McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991).

■ When considering a motion to dismiss, the allegations should be construed favorably to the pleader, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), however, if the motion challenges the truth of the jurisdictional facts alleged in the complaint, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988); *Moyer v. United States*, 190 F.3d at 1317; *Gallucci v. United States*, 41 Fed.Cl. 631, 638 (1998). "The court should look beyond the pleadings and decide for itself those facts, even in dispute, which are necessary for a determination of [the] jurisdictional merits." *Pride v. United States*, 40 Fed.Cl. 730, 732 (1998) (quoting *Farmers Grain Co. of Esmond v. United States*, 29 Fed.Cl. 684, 686 (1993)). Dismissal is appropriate only if "it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

■ In this case, plaintiff cites to the Military Whistleblower Protection Act, 10 U.S.C. § 1034, as the only basis for Tucker Act jurisdiction over his claims in this court. Plaintiff claims that he was forced to retire after retaliatory personnel actions taken by officials in the PHS and the government of the District of Columbia resulted in his not being promoted. However, this court has held that the Military Whistleblower Protection Act provides solely an administrative process for handling complaints of improper retaliatory personnel actions. *See Hernandez v. United States*, 38 Fed.Cl. 532 (1997) (following *Acquisto v. United States*, 70 F.3d 1010, 1011 (8th Cir.1995) and *Alasevich v. United States Air Force Reserve*, 1997 WL 152816 (E.D.Pa.1997)). Because the Military Whistleblower Protection Act provides strictly administrative remedies, plaintiff does not have a private cause of action on which to file a claim in this court. *Id.* The court concludes that the Military Whistleblower Protection Act is not a money-mandating statute such as is required for plaintiff to establish jurisdiction in this court.[2]

---

**2.** Nor can plaintiff rely upon the statute for correction of records, 10 U.S.C. § 1552 (1994), as a basis for Tucker Act jurisdiction. In *Dehne v. United States*, 970 F.2d 890, 894 (Fed.Cir.1992), the Federal Circuit held that 10 U.S.C. § 1552 is a not money-mandating statute by its terms. However, the statute is "money mandating if the Secretary makes a correction to a military record and then fails to pay plaintiff the resulting relief." *Pride v. United States*, 40 Fed.Cl. 730, 734 (1998); *see also Hernandez*, 38 Fed.Cl. at 537. In the instant case, the Board of Corrections made no corrections to plaintiff's records. Therefore, plaintiff cannot base jurisdiction over his claims on 10 U.S.C. § 1552.

Underlying all of plaintiff's allegations is the basic argument that the agency pursued a personal campaign designed to prevent his promotion which led to his allegedly involuntary retirement. Although this court is without jurisdiction to consider the merits of plaintiff's allegations of retaliatory actions, the court has jurisdiction to determine whether a resignation or retirement was voluntary. *See Moyer,* 190 F.3d at 1317. In its motion to dismiss, defendant argues that the court lacks jurisdiction over plaintiff's claims because plaintiff cannot establish that his submission of an application for retirement was involuntary. Therefore, defendant requests that plaintiff's claims for additional pay based upon wrongful discharge and correction of records be dismissed.

■ Generally, jurisdiction over claims for back pay and correction of records is based on a complainant's statutory entitlement to compensation. Like members of the uniformed services, officers of the regular Commissioned Corps are entitled to pay and allowances while on duty. *Compare* 42 U.S.C. § 210 (1994), *with* 37 U.S.C. § 204(a)(1) (1994). If members of the uniformed services are discharged involuntarily and improperly, their statutory right to pay is not extinguished, and that right of pay "serves as a basis for Tucker Act jurisdiction." *Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir. 1995); *see also Tippett,* 185 F.3d at 1255; *Shrader v. United States,* 38 Fed.Cl. 788, 798 (1997). Conversely, if an officer's "retirement was voluntary, he retained no statutory entitlement to compensation, and thus no money-mandating provision would support Tucker Act jurisdiction over his claim." *Adkins,* 68 F.3d at 1321 (citing *Sammt v. United States,* 780 F.2d 31, 33 (Fed.Cir.1985)).

The parties in this case dispute a necessary jurisdictional fact: the voluntariness of plaintiff's retirement. In the complaint, plaintiff alleges that (1) he was constructively discharged after being coerced into submitting what purported to be a voluntary retirement application and (2) his resignation was not voluntary because Ms. Dahlman deliberately withheld information, denying him the facts necessary to make an informed determination as to whether to retire or face the IRB. This court must determine for purposes of its jurisdiction whether plaintiff retired voluntarily from the Commissioned Officer Corps of the PHS. The court's determination of whether a specific resignation or retirement qualifies as voluntary requires an examination of all the facts and circumstances. *See Covington v. Department of Health and Human Servs.,* 750 F.2d 937, 941 (Fed.Cir. 1984).

■ In order to establish involuntary retirement, an officer bears the burden of overcoming the well accepted presumption that retirements and resignations are voluntary. *See Christie v. United States,* 207 Ct. Cl. 333, 518 F.2d 584, 587 (1975); *Staats v. United States Postal Serv.,* 99 F.3d 1120, 1123 (Fed.Cir.1996); *Gallucci v. United States,* 41 Fed.Cl. 631, 638 (1998). This presumption has been defeated in cases where the employee established by sufficient evidence that it (1) resigned as a result of agency misrepresentation or deception, *see Tippett,* 185 F.3d at 1255, *Scharf v. Department of the Air Force,* 710 F.2d 1572, 1575 (Fed.Cir.1983) and *Covington,* 750 F.2d at 942; (2) resigned under duress or coercion brought on by government action, *see Middleton v. Department of Defense,* 185 F.3d 1374 (Fed.Cir.1999); (3) submitted a resignation under time pressure, *see Middleton,* 185 F.3d 1374 and *Staats,* 99 F.3d at 1126; (4) unsuccessfully tried to withdraw his resignation before its effective date, *see Cunningham v. United States,* 191 Ct.Cl. 471, 423 F.2d 1379, 1384–85 (1970); or (5) failed to understand the situation due to mental incompetence, *see Manzi v. United States,* 198 Ct.Cl. 489, 492, 1972 WL 20799 (1972). *See generally, Gallucci,* 41 Fed.Cl. at 637. However, the presumption is not overcome by the fact that plaintiff may have been faced with an inherently unpleasant situation or that his choice was limited to two unpleasant alternatives. *See Sammt,* 780 F.2d at 32; *Covington,* 750 F.2d at 942. Moreover, the probability of removal does not change a voluntary resignation into an involuntary one. *See Bergman v. United States,* 28 Fed.Cl. 580, 587 (1993) (citing *Griessenauer v. Department of Energy,* 754 F.2d 361, 364 (Fed.Cir. 1985)).

In the instant case, plaintiff claims that his retirement was the product of both coercion and misrepresentation. In the complaint, plaintiff alleges that he was constructively discharged after being coerced into submitting what purported to be a voluntary retirement application. In order to establish involuntariness on the basis of coercion, plaintiff must show that (1) one side involuntarily accepted the terms of another; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of coercive acts of the opposite party. *See Middleton*, 185 F.3d at 1379; *Gallucci*, 41 Fed.Cl. at 638. Furthermore, plaintiff must establish all three elements to prevail on a claim of duress and government coercion. *Gallucci*, 41 Fed.Cl. at 638. In this case plaintiff cannot show that he involuntarily retired because (1) he was confronted with a choice of whether to retire and (2) his decision to retire was voluntary. Following his second non-promotion for the permanent grade O–6, the PHS sent plaintiff a letter which notified him that his record would be reviewed by an IRB because he had been passed over for promotion twice. In the same letter, plaintiff was informed of his option to retire without going before the IRB. Additionally, after meeting with Ms. Dahlman on July 29, 1993, on August 2, 1993, and again on August 27, 1993, plaintiff submitted requests for voluntary retirement and plaintiff's attorney confirmed plaintiff's decision in a letter of understanding dated August 2, 1993. Clearly circumstances permitted plaintiff more than one option, and plaintiff's written communications demonstrate the voluntariness of his decision to retire. The court concludes that plaintiff has failed to defeat the presumption of voluntariness based on claims of duress or coercion.

Plaintiff also contends that his resignation was not voluntary because Ms. Dahlman deliberately withheld information, denying him the facts necessary to make an informed determination as to whether to retire or face the IRB. It is well established that a retirement will be considered involuntary if the government supplied deceptive information and an individual resigned in reasonable reliance upon that misrepresenta-tion. *See Scharf v. Department of the Air Force*, 710 F.2d 1572, 1574 (Fed.Cir.1983); *Covington*, 750 F.2d at 942. To prevail, the plaintiff must establish that a reasonable person would have been misled by the agency's statements and that the plaintiff relied on the agency's misinformation. *See Covington*, 750 F.2d at 942; *Gallucci*, 41 Fed. Cl. at 640; *Bergman*, 28 Fed.Cl. at 587.

Plaintiff primarily relies on the case of *Covington v. Department of Health and Human Services*, 750 F.2d 937 (1984), as support for its argument. As in this case, the issue before the court was whether petitioner's retirement from the Community Services Administration was voluntary or involuntary. The "touchstone" of the Federal Circuit's analysis in *Covington* was whether the petitioner made an informed choice. *Covington*, 750 F.2d at 942. In *Covington*, petitioner received a notice informing him that as a result of a reduction-in-forces action his position would be abolished and he would be separated from the service on September 30, 1981. On that date, petitioner retired from service. Although petitioner had a choice between discontinued service and separation without severance pay, the court concluded that petitioner's retirement was involuntary. *Id.* at 944. The court determined that petitioner did not make an informed choice and that the agency was responsible because (1) the initial notice to petitioner was "misleading and erroneous in material ways" and (2) the agency failed to inform petitioner that a retirement election would preclude a later appeal. *Id.* at 942–43. The court concluded that a "decision with 'blinders on', based on misinformation or lack of information, cannot be binding as a matter of fundamental fairness and due process." *Id.* at 943.

In the case at bar, plaintiff complains that he was not given the information necessary to make a determination as to whether to voluntarily retire or to demand review before an IRB. Specifically, plaintiff complains that Ms. Dahlman did not inform him that damaging documents had been placed in his official personnel file and went to the promotion board. Plaintiff also claims that he learned

of these documents subsequent to his retirement in 1994.

However, the court finds that plaintiff's attorney's August 2, 1993, letter of understanding to Ms. Dahlman discredits plaintiff's claim that he retired without knowledge of such documents. Particularly damaging is the statement that "Before agreeing to the offer, Dr. Soeken was to review his file to discover items which he wanted removed from his files." It is clear from the letter that plaintiff reviewed his file because plaintiff's attorney discusses various offensive items that plaintiff discovered in his files on July 30, 1993. Furthermore, on August 3, 1993, the day after plaintiff submitted his first request for retirement to Ms. Dahlman, plaintiff requested copies of specific documents from his file which plaintiff alleges to have remained unknown to him until after his retirement. The court concludes that plaintiff's decision to voluntarily retire was not made with "blinders on" as alleged in the pleadings, nor was it based on misinformation or lack of information.

Furthermore, *Covington* provides no support for plaintiff's claim of misrepresentation because the PHS provided accurate information to plaintiff. In this case, plaintiff does not allege that Ms. Dahlman or any other official at the PHS made statements that were misleading, erroneous or materially affected plaintiff's decision regarding retirement, or that he was not fully informed of his rights. In fact, plaintiff received a letter on July 9, 1993, correctly informing plaintiff of his rights after not being recommended for promotion to the permanent O-6 grade two years in a row, including his right to provide the IRB with any pertinent information.

Additionally, the Federal Circuit in *Gaudette v. Department of Transportation*, 832 F.2d 1256 (Fed.Cir.1987), limited the "lack of information" exception in *Covington* to situations "where the agency had given misinformation and had an affirmative obligation to correct the misinformation by supplying the correct information." *Gaudette*, 832 F.2d at 1258; *see also Gallucci*, 41 Fed.Cl. at 641; *Bergman v. United States*, 28 Fed.Cl. 580,

588 (1993). Because PHS provided plaintiff with accurate information, the court concludes that Ms. Dahlman had no obligation to review plaintiff's file with him. The court concludes that plaintiff has failed to overcome the presumption that his retirement was voluntary based on claims of misrepresentation and deception because plaintiff was fully informed of his rights as well as the contents of his official personnel file prior to the submission of his voluntary retirement application.

After careful consideration of the pleadings and exhibits in this case, the court concludes that plaintiff's retirement from the PHS was voluntary. Exhibits in this case reflect that plaintiff first requested retirement on August 2, 1993, with his submission of a separation form to Ms. Dahlman, the Director of the Division of Commissioned Personnel at the PHS. On that same date, Ms. Dahlman, received a letter from plaintiff's legal counsel confirming his willingness to retire after having had the opportunity to review his personnel file on July 30, 1993. Moreover, on August 27, 1993, plaintiff wrote to Ms. Dahlman again affirming his "agreeing to retire" and informing her of his intention to "hand carry" his separation form to the appropriate authority. Plaintiff has not alleged sufficient facts that would tend to rebut the presumption that his request to retire was voluntary. The court agrees with defendant that the fact plaintiff knowingly, and with the assistance of able counsel, chose one less-than-ideal option over an even less desirable option does not render his retirement involuntary. The exhibits in this case reflect that plaintiff chose to retire rather than present his case before the involuntary retirement board, and it is that choice which deprives this court of jurisdiction over his claims. Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction is, hereby, granted.

## CONCLUSION

Based on the foregoing, the court concludes that plaintiff's complaint must be dismissed pursuant to RCFC 12(b)(1) because (1) plaintiff voluntarily resigned from the

PHS and (2) the Military Whistleblower Protection Act cannot support this court's jurisdiction as it is not money-mandating. Accordingly, defendant's motion to dismiss is granted, and the Clerk of the Court is directed to dismiss the complaint without prejudice. No costs.

**IT IS SO ORDERED.**